STATE OF CONNECTICUT *v.* JAMES A. MCCAHILL
(HHB CR99-0005116-T)

JENNIFER F. *v.* JAMES A. MCCAHILL ET AL.
(SC 16574)

Sullivan, C. J., and Borden, Norcott, Katz, Palmer, Vertefeuille and Zarella, Js.

Argued November 27, 2001—officially released August 20, 2002

*Daniel J. Krisch*, with whom were *James F. Papillo*, victim advocate, and *Daniel T. Butler*, for the plaintiff in error.

*Jon L. Schoenhorn*, for the defendant in error-respondent (James A. McCahill).

*Bruce R. Lockwood*, assistant state's attorney, with whom, on the brief, were *John M. Bailey*, chief state's attorney, *Scott J. Murphy*, state's attorney, and *Brian Preleski*, assistant state's attorney, for the defendant in error-petitioner (state).

*Richard Blumenthal*, attorney general, *Gregory T. D'Auria*, associate attorney general, and *Jane R. Rosenberg*, assistant attorney general, filed a brief for the office of the attorney general as amicus curiae.

*Richard Emanuel* filed a brief for the Connecticut Criminal Defense Lawyers Association et al. as amici curiae.

*Helen L. McGonigle, Douglas E. Beloof,* pro hac vice, and *Gina McClard,* pro hac vice, filed a brief for the National Center for Victims of Crime et al. as amici curiae.

*G. Douglas Nash,* chief of legal services, and *Gerard A. Smyth,* chief public defender, filed a brief for the office of the chief public defender as amicus curiae.

*Opinion*

NORCOTT, J. This is a petition for bail review filed by the state pursuant to General Statutes § 54-63g.[1] The dispositive issue presented is whether an amendment to General Statutes (Rev. to 1999) § 54-63f, namely, No. 00-200, § 5, of the 2000 Public Acts (P.A. 00-200, § 5),[2]

[1] General Statutes § 54-63g provides: "Any accused person or the state, aggrieved by an order of the Superior Court concerning release, may petition the Appellate Court for review of such order. Any such petition shall have precedence over any other matter before said Appellate Court and any hearing shall be heard expeditiously with reasonable notice."

[2] General Statutes (Rev. to 1999) § 54-63f, as amended by P.A. 00-200, § 5, provides: "A person who has been convicted of any offense, except a violation of section 53a-54a [murder], 53a-54b [capital felony], 53a-54c [felony murder] or 53a-54d [arson murder] or any offense involving the use, attempted use or threatened use of physical force against another person, and is either awaiting sentence or has given oral or written notice of such person's intention to appeal or file a petition for certification or a writ of certiorari may be released pending final disposition of the case, unless the court finds custody to be necessary to provide reasonable assurance of such person's appearance in court, upon the first of the following conditions of release found sufficient by the court to provide such assurance: (1) Upon such person's execution of a written promise to appear, (2) upon such person's execution of a bond without surety in no greater amount than necessary, (3) upon such person's execution of a bond with surety in no greater amount than necessary, (4) upon such person's deposit, with the clerk of the court having jurisdiction of the offense with which such person stands convicted or any assistant clerk of such court who is bonded in the same manner as the clerk or any person or officer authorized to accept bail, a sum of money equal to the amount called for by the bond required by the court, or (5) upon such person's pledge of real property, the equity of which is equal to the amount called for by the bond required by the court, provided the person pledging such property is the owner of such property. When cash bail is offered, such bond shall be executed and the money shall

which prohibits a trial court from releasing on bail any person who has been convicted of an offense "involving the use, attempted use or threatened use of physical force against another person," violates the separation of powers provision contained in article second of the Connecticut constitution, as amended by article eighteen of the amendments.[3] The state challenges the order of the trial court releasing the defendant, James A. McCahill, on bail pending his appeal from the trial court's judgment of conviction of burglary in the first degree in violation of General Statutes § 53a-101 (a) (2),[4] and sexual assault in the first degree in violation of General Statutes § 53a-70 (a) (1).[5] The trial court's

be received in lieu of a surety or sureties upon such bond. Such cash bail shall be retained by the clerk of such court until a final order of the court disposing of the same is passed, provided, if such bond is forfeited, the clerk of such court shall pay the money to the payee named therein, according to the terms and conditions of the bond."

In addition to minor technical changes, P.A. 00-200, § 5, which became effective October 1, 2000, added the language prohibiting the release of a person convicted of "any offense involving the use, attempted use or threatened use of physical force against another person . . . ." Public Act 00-200, § 5, is now codified at General Statutes § 54-63f. Hereafter, unless otherwise indicated, all references to P.A. 00-200, § 5, are to the language prohibiting release for an individual convicted of "any offense involving the use, attempted use or threatened use of physical force against another person . . . ."

[3] Article second of the constitution of Connecticut, as amended by article eighteen of the amendments, provides: "The powers of government shall be divided into three distinct departments, and each of them confided to a separate magistracy, to wit, those which are legislative, to one; those which are executive, to another; and those which are judicial, to another. The legislative department may delegate regulatory authority to the executive department; except that any administrative regulation of any agency of the executive department may be disapproved by the general assembly or a committee thereof in such manner as shall by law be prescribed."

[4] General Statutes § 53a-101 (a) provides in relevant part: "A person is guilty of burglary in the first degree when he enters or remains unlawfully in a building with intent to commit a crime therein and . . . (2) in the course of committing the offense, he intentionally, knowingly or recklessly inflicts or attempts to inflict bodily injury on anyone."

[5] General Statutes § 53a-70 (a) provides in relevant part: "A person is guilty of sexual assault in the first degree when such person (1) compels

order of release on bail was based on its determination that P.A. 00-200, § 5, violated the separation of powers provision. We agree with the trial court. In addition, for the reasons that follow, we need not address the claim of the plaintiff in error, Jennifer F., the victim of the burglary and sexual assault, and the victim advocate, in the writ of error to this court, that she has standing as a victim to pursue an appellate remedy for a claimed violation of a right contained in article first, § 8 (b), of the Connecticut constitution, as amended by articles seventeen and twenty-nine of the amendments,[6] which is more commonly known as the victim's rights amendment, because we conclude that the writ of error is moot.

---

another person to engage in sexual intercourse by the use of force against such other person or a third person, or by the threat of use of force against such other person or against a third person which reasonably causes such person to fear physical injury to such person or a third person . . . ."

[6] Article first, § 8 (b), of the constitution of Connecticut, as amended by articles seventeen and twenty-nine of the amendments, provides: "In all criminal prosecutions, a victim, as the general assembly may define by law, shall have the following rights: (1) The right to be treated with fairness and respect throughout the criminal justice process; (2) the right to timely disposition of the case following arrest of the accused, provided no right of the accused is abridged; (3) the right to be reasonably protected from the accused throughout the criminal justice process; (4) the right to notification of court proceedings; (5) the right to attend the trial and all other court proceedings the accused has the right to attend, unless such person is to testify and the court determines that such person's testimony would be materially affected if such person hears other testimony; (6) the right to communicate with the prosecution; (7) the right to object to or support any plea agreement entered into by the accused and the prosecution and to make a statement to the court prior to the acceptance by the court of the plea of guilty or nolo contendere by the accused; (8) the right to make a statement to the court at sentencing; (9) the right to restitution which shall be enforceable in the same manner as any other cause of action or as otherwise provided by law; and (10) the right to information about the arrest, conviction, sentence, imprisonment and release of the accused. The general assembly shall provide by law for the enforcement of this subsection. Nothing in this subsection or in any law enacted pursuant to this subsection shall be construed as creating a basis for vacating a conviction or ground for appellate relief in any criminal case."

The following facts and procedural history are relevant to our resolution of the petition for review and writ of error. On May 23, 2001, the defendant was found guilty, following a jury trial, of burglary in the first degree and sexual assault in the first degree for an incident that had occurred in January, 1999. Following the trial court's acceptance of the jury verdict, the state requested that the defendant be held without bail pending sentencing, in accordance with P.A. 00-200, § 5. After hearing argument from the parties on this issue, the trial court, *Hon. Bernard D. Gaffney*, judge trial referee, declined to take the defendant into custody and, instead, set bond at $250,000. The defendant thereafter posted bond and was released.

The trial court then referred the matter to the adult probation department for the preparation of a presentence investigation and report. On August 9, 2001, the trial court sentenced the defendant to twelve years imprisonment, execution suspended after six years, with six years special parole. After imposition of the sentence, the defendant requested that he be released on bail during the pendency of his appeal. The state objected on the ground that the defendant had been convicted of a crime involving the use of physical force against another person and, therefore, P.A. 00-200, § 5, prohibited the defendant's release on bail. After hearing argument from the parties and the state victim advocate[7] on this issue, the trial court released the defendant

---

[7] The office of victim advocate is charged, generally, with advocating on behalf of victims in this state. Under General Statutes (Rev. to 2001) § 46a-13c (5), the victim advocate may "[f]ile a limited special appearance in any court proceeding for the purpose of advocating" for a select subset of the constitutional rights provided to victims in article first, § 8 (b), of the state constitution, as amended by articles seventeen and twenty-nine of the amendments. The legislature recently amended General Statutes (Rev. to 2001) § 46a-13c (5) so that the victim advocate may now "[f]ile a limited special appearance in any court proceeding for the purpose of advocating for any right guaranteed to a crime victim by the Constitution of the state or any right provided to a crime victim by any provision of the general statutes . . . ." Public Acts 2001, No. 01-211, § 12 (5).

on $250,000 bond, on the basis of its conclusion that P.A. 00-200, § 5, violated the separation of powers provision. The trial court also ordered the defendant to avoid any contact with the victim.

The day after imposition of the defendant's sentence and his release on bond, the state, pursuant to § 54-63g, filed this petition for review in the Appellate Court challenging the trial court's order releasing the defendant on bail following the imposition of his sentence.[8] On August 23, 2001, the victim filed a writ of error in this court. The victim advocate initially acted as counsel for the victim in prosecution of the writ.[9] In the writ, the victim also challenged the trial court's decision to release the defendant and asserted that her constitutional right under the victim's rights amendment to be "reasonably protected from the accused" was violated by the defendant's release. We transferred the state's petition for bail review to this court pursuant to General Statutes § 51-199 (c)[10] and Practice Book § 65-3,[11] and we ordered that it be consolidated with the writ of error.

[8] Thereafter, the Appellate Court ordered the trial court to articulate the basis for its order releasing the defendant on bail following his conviction. The trial court issued its articulation on September 26, 2001.

[9] On November 19, 2001, a private counsel entered an appearance with this court to represent the victim. The private counsel's appearance was in addition to the extant representation of the victim by the victim advocate.

Our original order to the parties regarding briefing for these cases directed the parties to address whether the victim advocate has standing to challenge the trial court's release order. Because we conclude that the writ of error is moot, we do not decide whether the victim advocate may, consistent with the authority vested in the victim advocate under § 46a-13c (5), also pursue such a remedy.

[10] General Statutes § 51-199 (c) provides in relevant part: "The Supreme Court may transfer to itself a cause in the Appellate Court. . . ."

[11] Practice Book § 65-3 permits the transfer of a petition for review of a bail order from the Appellate Court to the Supreme Court. Section 65-3 provides: "Whenever a petition for review of an order of the superior court concerning release is filed in the appellate court pursuant to General Statutes § 54-63g in any case on appeal to the supreme court or where the defendant could appeal to the supreme court if convicted, such petition shall be transferred to the supreme court pursuant to the exercise of the supreme court's

## I

## THE VICTIM'S WRIT OF ERROR

We first address the victim's writ of error to this court. For the reasons that follow, we dismiss the victim's writ of error as moot, and do not resolve whether the victim's rights amendment affords either the victim or the victim advocate the right to bring a writ of error for a purported violation of a right contained in the amendment. We conclude that, because of the procedural circumstances of these cases, a resolution of that question is not necessary to the ultimate issue addressed by all parties in both cases before this court, namely, whether P.A. 00-200, § 5, violates the separation of powers provision of our state constitution.

As previously noted, the two cases consolidated for argument before this court were the petition for review of the defendant's release on bail brought by the state and the writ of error brought by the victim. It is well established law that appellate rights are established by statute. "The right of appeal is purely statutory. It is accorded only if the conditions fixed by statute and the rules of court for taking and prosecuting the appeals are met. . . . *Kennedy* v. *Walker*, 135 Conn. 262, 266, 63 A.2d 589, aff'd, 337 U.S. 901, 69 S. Ct. 1046, 93 L. Ed. 1715 (1948). . . . [O]ur jurisdiction over appeals, both criminal and civil, is prescribed by statute . . . ." (Citations omitted.) *State* v. *Curcio*, 191 Conn. 27, 30, 463 A.2d 566 (1983). The ability to bring an appeal, in the civil or criminal context, depends upon the legislative authorization as contained in the General Statutes. The writ of error, however, is a concept "deeply rooted in our common law. *State* v. *Assuntino*, 173 Conn. 104, 109–10, 376 A.2d 1091 (1977); *State* v. *Caplan*, 85 Conn. 618, 622, 84 A. 280 (1912) . . . ." (Citations omitted.)

transfer jurisdiction under General Statutes § 51-199 (c) for review of such order."

*Banks* v. *Thomas*, 241 Conn. 569, 584, 698 A.2d 268 (1997). In other words, although the legislature has codified the right to bring a writ of error in General Statutes § 52-272,[12] that right exists independent of its statutory authorization.

The right to bring a petition for review of a bail decision, however, was created solely through the statutory enactment of § 54-63g. There is no independent, common-law basis for the petition. It is beyond cavil that, pursuant to § 54-63g, the victim is precluded from participating as a party in the state's petition for review. Section 54-63g makes review of a release order available to two parties: the state and the defendant. Although the victim has certain constitutional rights; see Conn. Const., amend. XXIX; which may have to be respected during the pendency of any appellate proceeding, the language of § 54-63g makes unequivocal the preclusion of a victim as a party in a petition for review. A victim seeking appellate vindication of these rights, therefore, must proceed, if at all, by writ of error, as the victim does here.

In the writ of error, the victim claims that her constitutional right to reasonable protection from the accused was violated by the trial court's release of the defendant. A preliminary question to that substantive issue, however, is whether the victim may seek appellate relief for a claimed violation of a right contained in the victim's rights amendment. This is, in part, a question of whether the victim has standing to pursue this writ of error. Ultimately, however, she must argue, as she does, that the trial court improperly concluded that P.A. 00-

[12] General Statutes § 52-272 provides: "Writs of error for errors in matters of law only may be brought from the judgments of the Superior Court to the Supreme Court and shall be made returnable to the next return day or next but one to which they can be made returnable. The return days of the Supreme Court shall be the first Tuesday of each month except the months of July, August and September."

200, § 5, was unconstitutional. This ultimate issue is the very same issue that is before this court in the petition for review brought by the state. In both the writ of error and in the petition for review, therefore, our ultimate determination is whether the trial court correctly concluded that P.A. 00-200, § 5, violated the separation of powers provision of the Connecticut constitution. Because both the writ of error and the petition for review raise the very same ultimate question, we conclude that the issue of standing under the writ of error is not necessary to our determination of the constitutionality of P.A. 00-200, § 5.

Put another way, the victim seeks by way of the writ of error, the ability to bring before this court the issue of whether the trial court's determination that P.A. 00-200, § 5, was unconstitutional—and the consequent release of the defendant—violated her constitutional right to be reasonably protected. The preliminary question, before we can reach the merits of her writ, is whether she has standing to bring the writ. That question—the question of her standing—is not one that we must answer because we resolve the issue of the constitutionality of P.A. 00-200, § 5, in the state's petition for review. The writ of error, therefore, is moot.

We do not take lightly our responsibility to act as the final arbiter in resolving issues relating to our constitution. See *Marbury* v. *Madison*, 5 U.S. (1 Cranch) 137, 177, 2 L. Ed. 60 (1803); *Pratt* v. *Allen*, 13 Conn. 119, 132 (1839). We also, however, do not engage in addressing constitutional questions unless their resolution is unavoidable. "Ordinarily, [c]onstitutional issues are not considered unless absolutely necessary to the decision of a case . . . . *State* v. *Cofield*, 220 Conn. 38, 49–50, 595 A.2d 1349 (1991); *State* v. *Onofrio*, 179 Conn. 23, 37–38, 425 A.2d 560 (1979); *State* v. *DellaCamera*, 166 Conn. 557, 560–61, 353 A.2d 750 (1974); see *Ashwander* v. *Tennessee Valley Authority*, 297 U.S. 288, 346–47, 56

S. Ct. 466, 80 L. Ed. 688 (1936) (Brandeis, J., concurring)."[13] (Internal quotation marks omitted.) *State* v. *Torres*, 230 Conn. 372, 382, 645 A.2d 529 (1994); *Moore* v. *McNamara*, 201 Conn. 16, 20, 513 A.2d 660 (1986) ("[t]his court has a basic judicial duty to avoid deciding a constitutional issue if a nonconstitutional ground exists that will dispose of the case"); see also 16 Am. Jur. 2d, Constitutional Law § 117 (1998). Because we may resolve the issue of whether P.A. 00-200, § 5, violates the separation of powers provision without also addressing the constitutional question of whether the victim's rights amendment permits her appellate review, we leave the latter issue for another day and proceed with an examination of the former.

## II

### THE STATE'S PETITION FOR REVIEW

We turn then, to the state's petition for review pursuant to § 54-63g, and an examination of the constitutionality of P.A. 00-200, § 5.

### A

Before reaching the merits of this issue, we consider the defendant's preliminary argument that this court lacks jurisdiction over the state's petition for review because the defendant's substantive appeal from the judgment of his conviction is presently before the Appellate Court and not this court. We disagree with the defendant and conclude that our jurisdiction over the petition for review is proper.

As noted, § 54-63g authorizes a petition for review of a bail order decision to be filed in the Appellate Court.

---

[13] In his concurrence in *Ashwander*, Justice Brandeis stated: "The Court will not pass upon a constitutional question although properly presented by the record, if there is also present some other ground upon which the case may be disposed of." *Ashwander* v. *Tennessee Valley Authority*, supra, 297 U.S. 347.

We have jurisdiction over the state's petition for review because we have transferred it to this court pursuant to § 51-199 (c), which provides that the "Supreme Court may transfer to itself a cause in the Appellate Court. . . ." The petition for review, authorized by § 54-63g, is not an appeal by which we appropriately could exercise jurisdiction via the certification authority conferred upon us by General Statutes § 51-197f.[14] See *State* v. *Ayala*, 222 Conn. 331, 340–41, 610 A.2d 1162 (1992). Section 51-199 (c) provides, however, that we may transfer a "cause" in the Appellate Court. In other words, our transfer authority by way of § 51-199 (c) is not limited to a formal appeal, but encompasses causes. The petition for review, once filed in the Appellate Court, is a cause that we appropriately may transfer to this court. Our jurisdiction is proper and, therefore, we proceed with an examination of the merits of the state's petition for review.

B

As noted, the trial court released the defendant on a $250,000 bond for the period of time between its acceptance of the guilty verdict and imposition of sentence, and again permitted the defendant to be free on bond after sentencing and during the pendency of his appeal of the conviction. In its memorandum of articulation, the trial court indicated that it had declined to follow the mandate of P.A. 00-200, § 5, because it had concluded that the statute represented an "[unconstitutional intrusion] upon the powers of the judicial magistr[ac]y." In other words, according to the trial court,

---

[14] General Statutes § 51-197f provides in relevant part: "Upon final determination of any appeal by the Appellate Court, there shall be no right to further review except the Supreme Court shall have the power to certify cases for its review upon petition by an aggrieved party or by the appellate panel which heard the matter and upon the vote of three justices of the Supreme Court so to certify and under such other rules as the justices of the Supreme Court shall establish . . . ."

P.A. 00-200, § 5, violates the separation of powers mandate, as codified in article second of the state constitution, as amended by article eighteen of the amendments. We agree and hold that P.A. 00-200, § 5, represents an unconstitutional intrusion upon the judicial magistracy.

Our responsibility to measure the constitutional nature of laws duly enacted by our legislature is without question. In the federal context, the United States Supreme Court has stated: "Deciding whether a matter has in any measure been committed by the Constitution to another branch of government, or whether the action of that branch exceeds whatever authority has been committed, is itself a delicate exercise in constitutional interpretation, and is a responsibility of this Court as ultimate interpreter of the Constitution." *Baker* v. *Carr*, 369 U.S. 186, 211, 82 S. Ct. 691, 7 L. Ed. 2d 663 (1962). We also serve as the body through which our state laws will be measured against the Connecticut constitution. See *Pratt* v. *Allen*, supra, 13 Conn. 132 ("[i]f the legislature shall attempt to encroach upon constitutional restrictions, it will become the solemn duty of the court to declare such an attempt illegal and the act void").

We begin with the well established proposition that "[b]ecause a validly enacted statute carries with it a strong presumption of constitutionality, those who challenge its constitutionality must sustain the heavy burden of proving its unconstitutionality beyond a reasonable doubt. . . . In construing a statute, moreover, we will search for an effective and constitutional construction that reasonably accords with the legislature's underlying intent." (Citations omitted.) *Bartholomew* v. *Schweizer*, 217 Conn. 671, 675–76, 587 A.2d 1014 (1991). We also note that, "[w]hen a question of constitutionality is raised, courts must approach it with caution, examine it with care, and sustain the legislation unless its invalidity is clear." *Snyder* v. *Newtown*, 147 Conn. 374, 390, 161 A.2d 770 (1960).

"[T]he primary purpose of [the separation or powers] doctrine is to prevent commingling of different powers of government in the same hands. . . . The constitution achieves this purpose by prescribing limitations and duties for each branch that are essential to each branch's independence and performance of assigned powers. . . . It is axiomatic that no branch of government organized under a constitution may exercise any power that is not explicitly bestowed by that constitution or that is not essential to the exercise thereof. . . . [Thus] [t]he separation of powers doctrine serves a dual function: it limits the exercise of power within each branch, yet ensures the independent exercise of that power." (Citations omitted; internal quotation marks omitted.) *Massameno* v. *Statewide Grievance Committee*, 234 Conn. 539, 551–52, 663 A.2d 317 (1995).

"In the context of challenges to statutes whose constitutional infirmity is claimed to flow from impermissible intrusion upon the judicial power, we have refused to find constitutional impropriety in a statute simply because it affects the judicial function . . . . A statute violates the constitutional mandate for a separate judicial magistracy only if it represents an effort by the legislature to exercise a power which lies exclusively under the control of the courts . . . or if it establishes a significant interference with the orderly conduct of the Superior Court's judicial functions." (Citation omitted; internal quotation marks omitted.) *Bartholomew* v. *Schweizer*, supra, 217 Conn. 676. "In accordance with these principles, a two part inquiry has emerged to evaluate the constitutionality of a statute that is alleged to violate separation of powers principles by impermissibly infringing on the judicial authority. . . . A statute will be held unconstitutional on those grounds if: (1) it governs subject matter that not only falls within the judicial power, but also lies exclusively within judicial control; or (2) it significantly interferes with the orderly

functioning of the Superior Court's judicial role." (Internal quotation marks omitted.) *State* v. *Angel C.*, 245 Conn. 93, 131, 715 A.2d 652 (1998).

As noted, P.A. 00-200, § 5, provides in relevant part: "A person who has been convicted of any offense, except . . . [one] involving the use, attempted use or threatened use of physical force against another person, and is either awaiting sentence or has given oral or written notice of such person's intention to appeal or file a petition for certification or a writ of certiorari may be released pending final disposition of the case . . . ." The effect of the amendment is to restrict a trial court from releasing any individual who has been convicted of a crime involving physical force that is actual, attempted or threatened. The prohibition on release applies following conviction, and even those defendants who have not yet been sentenced are subject to the release restriction. Thus, the amendment serves to mandate immediate incarceration upon the rendition of a guilty verdict in a case in which the defendant has been charged with a crime involving physical force.

We begin our examination of the constitutionality of P.A. 00-200, § 5, with a brief account of the transformation of the statutory language into its present form. "In order to put the defendant's constitutional claims into perspective, we must review the history of the state legislation [that is implicated by those claims]." *Perry* v. *Perry*, 222 Conn. 799, 806, 611 A.2d 400 (1992), overruled in part, *Bryant* v. *Bryant*, 228 Conn. 630, 636 n.4, 637 A.2d 1111 (1994). In 1967, when § 54-63f was first enacted, the statute provided in relevant part: "A person who has been convicted of *any offense* and is either awaiting sentence or has given oral or written notice of his intention to appeal or file a petition for certification or a writ of certiorari *may be released* pending final disposition of the case, unless the court finds custody to be necessary to provide reasonable assurance of his

appearance in court, upon the first of the following conditions of release found sufficient by the court to provide such assurance . . . ." (Emphasis added.) General Statutes (Rev. to 1968) § 54-63f. In 1967, therefore, the statute expressly affirmed the trial court's discretion to grant postconviction bail to a defendant who had been convicted of any offense.

The public act that created § 54-63f is entitled, "An Act Concerning Bail Procedures for Arrested Persons." Public Acts 1967, No. 549, § 14. As a general matter, that act amounted to the legislature's attempt to develop new procedures for the provision of bail in Connecticut. The legislative history concerning Public Acts 1967, No. 549, § 14, reveals that the act was intended, generally, to *enhance* a defendant's right to bail. In speaking of that act, Representative John A. Carrozzella stated: "The purpose of the bill is to revise bail procedures to assure the prompt release of arrested persons pending their appearance in court." 12 H.R. Proc., Pt. 9, 1967 Sess., p. 3870. Representative Robert D. King stated: "It has been very difficult to assure any arrested person that he would be released on bail. . . . I think [the bill] brings the bail provisions out of the dark ages into the [twentieth] century." Id., pp. 3872–73. On the basis of the legislative history of Public Acts 1967, No. 549, § 14, and the plain language of § 54-63f, we reasonably can conclude that, in 1967, the legislature intended § 54-63f to serve as a directive that: (1) a defendant who had been convicted of any offense would be eligible for postconviction bail; and (2) discretion rested with the trial court to make an appropriate determination as to when such bail should be granted. "[The defendant] may be released . . . *unless the court* finds custody to be necessary to provide reasonable assurance of his appearance in court, upon the first of the following conditions of release found sufficient *by the court* to

provide such assurance . . . ." (Emphasis added.) General Statutes (Rev. to 1968) § 54-63f.

By the late 1990s, however, the legislature began to limit the provision of postconviction release.[15] In 1998, the legislature constricted the expansive group of all convicted criminals for whom release was available, to only those criminals who had not been convicted of murder, capital felony, felony murder or arson murder. See Public Acts 1998, No. 98-51 (P.A. 98-51). In other words, P.A. 98-51 served to limit the discretion of the trial court to release on bail a defendant who had been convicted of any of the aforementioned serious crimes. Finally, in 2000, the legislature acted to limit further the trial court's discretion when it prohibited the release of any person convicted of a crime involving the use, attempted use or threatened use of physical force against another person. See P.A. 00-200, § 5. Although § 54-63f, as presently codified, contains the language placing discretion in the trial court regarding its determination as to whether to release a convicted defendant, the trial court's discretion, no doubt, has been curtailed, as the class of individuals over whom the trial court may exercise its discretion has been decreased from all defendants to only those defendants who have not been convicted of murder, capital felony, felony murder or arson murder, or crimes involving physical force against another person.

In sum, by P.A. 98-51 and P.A. 00-200, § 5, the legislature has transformed the 1967 statute that was enacted to make postconviction bail available to *all defendants*, to a statute that eliminates the trial court's discretion to grant such bail to various classes of convicted offenders. Whether in passing P.A. 00-200, § 5, the legislature acted properly, that is, without violating the separation

---

[15] Section 54-63f was also amended, for purposes not relevant to this petition, by No. 89-47 of the 1989 Public Acts.

of powers provision, is the subject of this petition and, therefore, we turn to that issue.

As noted, the test for determining whether a statute violates the separation of powers provision is expressed in the alternative. A legislative enactment violates the separation of powers provision if it *either* governs subject matter that falls within the exclusive control of the judiciary, *or* if the statute creates a significant interference with the orderly functioning of the Superior Court's judicial role. *State* v. *Angel C.*, supra, 245 Conn. 131. For the reasons that follow, we conclude that P.A. 00-200, § 5, is unconstitutional because it presents a significant interference with the orderly functioning of the Superior Court's judicial role.

An initial consideration is whether the constitutionality of P.A. 00-200, § 5, should be determined solely on the facts of this case, or by examining the statute in light of other cases that conceivably could fall within the grasp of the statute's reach. We conclude that the latter approach is most appropriate in this circumstance.

As noted, it is our conclusion that P.A. 00-200, § 5, violates the separation of powers provision because it significantly interferes with the orderly functioning of the Superior Court's judicial role. The nature of this conclusion relies on the premise that P.A. 00-200, § 5, will create an interference with the trial court's disposition of cases *other than just this case*. In other words, it would be a remarkable conclusion to state that a statute creates a significant interference because, upon one set of facts, the orderly functioning of the trial court's judicial role has been upset. More correctly, we consider the separation of powers challenge to have merit because of the Superior Court's regular role in supervising the prosecution of individuals charged with crimes involving the use of physical force against

another person. It is these many cases together, along with the elimination of the Superior Court's discretion to grant bail in appropriate circumstances in that large class of cases, that creates the significant interference.

There can be no doubt that the sole control over the provision of postconviction bail rested, until 1967, with the Superior Court. The legislature's participation in this area began with the enactment of § 54-63f in 1967, as we have been unable to discover any earlier statutes addressing the provision of postconviction bail. As noted, the 1967 enactment respected the trial court's ability to make an appropriate determination as to whether postconviction bail should be granted. It is manifest, however, that the judicial branch has long had the power to submit a defendant to bail following conviction. This power has existed in the judicial branch since the earliest days of Connecticut's statehood and even before. In an early Superior Court case, the court stated: "After verdict of the jury finding the prisoner guilty and before judgment rendered, [the attorney] moved that the prisoner might be admitted to bail to appear and abide the judgment of Court—which was admitted. . . . There had been some doubts with the Court formerly whether the Court had right to bail after conviction and before judgment—but it was now settled—and the Court admitted bail to be taken." *State* v. *Beach*, 2 Kirby (Conn. Sup.) 20, 21 (1786–87).

As we previously have noted, one of the greatest achievements of the 1818 constitution was the separation of the powers of government into three departments. See *Adams* v. *Rubinow*, 157 Conn. 150, 153, 251 A.2d 49 (1968). While the 1818 constitution for the first time provided for this separation of powers, it did not disturb the functions then in existence in the Superior Court. "The 'Superiour Court' had been established in May, 1711, as a trial court of general jurisdiction and

was in existence when our constitution was adopted in 1818. [5 Col. Rec. 238 (1712); Statutes (1808 Rev.) p. 205]. There can be no doubt that it was the intent of the [1818] constitution that this court should continue, with the essential characteristics it had previously possessed. See [Statutes (1821 Rev.) p. 138]." *Walkinshaw* v. *O'Brien,* 130 Conn. 122, 127, 32 A.2d 547 (1943); see also *Carpenter* v. *Meachum,* 229 Conn. 193, 197–98, 640 A.2d 591 (1994); *Szarwak* v. *Warden,* 167 Conn. 10, 34, 355 A.2d 49 (1974). In other words, when the constitution was adopted in 1818, the Superior Court maintained the power to exercise its discretion to grant postconviction bail in appropriate circumstances.

In 1899, in *State* v. *Vaughan,* 71 Conn. 457, 42 A. 640 (1899), this court discussed in general the Superior Court's power to grant postconviction bail. "The power to admit to bail after conviction is not a statutory but a common-law power . . . bail is then a matter of *absolute discretion,* to be exercised by the court, however, with great caution, and rarely to be allowed when the crime is serious. But the *power* to admit to bail is inherent in the court so long as the prisoner is in its custody; that is, until he is taken in execution." (Emphasis altered.) Id., 460–61. With regards to the English Court, of which our Superior Court possessed the same common-law powers, this court stated: "The Court of King's Bench, by the plenitude of its power, may admit to bail in all cases on consideration of the nature and circumstances of the case. . . . *This power continues after conviction and after judgment,* so long as the prisoner is in the custody of the court, but in most cases ceases when he is taken in execution . . . . Such common-law powers of the Court of King's Bench belong to the Superior Court. In most of our States bail is largely controlled by statute. But when the courts exercise the common-law power, they may admit to bail, after conviction and after sentence, and until the

accused is in execution." (Citations omitted; emphasis added.) Id., 461. We have never departed from the principles announced in *Vaughan*. That case, therefore, presents compelling evidence of the inherent, common-law powers possessed by the Superior Court to exercise its discretion to grant postconviction bail "in all cases . . . ." Id.

Although it is evident, therefore, that the judicial power in the area of postconviction bail is one anciently derived, and that the legislative influence is more recent, P.A. 00-200, § 5, will still pass constitutional muster if it does not create a significant interference with the orderly functioning of the Superior Court's judicial role. We conclude that the statute, in the variety of circumstances in which it must be applied, serves to create such an interference and is, therefore, unconstitutional.

The power to admit to bail exists not simply as an exercise of the judicial prerogative, but so that a defendant's right to bring an appeal will not result in a meaningless proceeding. "[T]he *power* to admit to bail is inherent in the court so long as the prisoner is in its custody; that is, until he is taken in execution. . . . But it *necessarily follows* from the principle . . . that where, as in this State, a review of the judgment by a Court of Errors is a matter of right, there *must* be power in the courts to stay execution and, if the special circumstances of the case justify it, to admit to bail." (Citations omitted; emphasis altered; internal quotation marks omitted.) *State* v. *Vaughan*, supra, 71 Conn. 461.

In other words, as we previously have recognized, if the right to bail and stay of execution pending appeal did not exist, "the right of appeal would be destroyed or seriously hampered, [because] the period of the pendency and determination of the appeal by this court might be considerable . . . ." (Internal quotation

marks omitted.) *Carino* v. *Watson*, 171 Conn. 366, 369, 370 A.2d 950 (1976); *Winnick* v. *Reilly*, 100 Conn. 291, 298, 123 A. 440 (1924). The power to stay execution and admit to bail is necessary so that a defendant's right to review of the judgment will not become an exercise of form without substance. Because, under the statute, a convicted offender of a crime involving physical force must be incarcerated immediately, the likelihood exists that a defendant who has been convicted of a minor offense and who would be sentenced to a short term of imprisonment, would find his statutory right to appellate review of the judgment meaningless. If, by the time his appeal is adjudicated, he had completed his term of incarceration, then the practical effect of a successful appeal would be reduced to eliminating the collateral effects of the conviction, and the *direct* effect—namely, the sentence of incarceration—would be irremediable. Put another way, the statute is offensive to the orderly functioning of the Superior Court because it destroys, in a potentially very broad class of cases, the trial court's discretion to grant bail, during the pendency of an appeal. In the absence of such a power, a defendant who has been convicted of a minor offense and who will receive only a short term of imprisonment, will likely serve most, and probably all, of his sentence *before* his appeal would be decided; and, if his appeal were to be successful, that success would, therefore, be empty.

The legislative history of P.A. 00-200, § 5, reveals that at least one legislator accurately envisioned the dangers created by the statute. During debate on the bill, Representative Robert Farr proposed an amendment that would have deleted the language referring to the prohibition on release for physical offenses. His proposed amendment failed. During the debate, however, Representative Farr stated: "But the problem with this [bill] is that it goes far, it goes much too far. People who

commit violent crimes should be treated seriously but you have to understand that not everybody who commits a violent crime is automatically going to be sentenced to jail." 43 H.R. Proc., Pt. 13, 2000 Sess., pp. 4327–28. Later, Representative Farr stated: "If the sentence was a relatively short sentence, ten days, [thirty] days, [sixty] days, the individual decides to appeal that conviction, today as I understand it they post bond, they give a notice of appeal, they've posted the bond. As I understand this language, they can't any longer post bail, they can't post bail. They're not entitled to bail. They will then go do their sixty days . . . while their appeal is pending. The court overturns the appeal, too bad. They've done the sentence. And if the appeal takes two years to complete, anybody who gets sentenced up to two years, as I read this, does the sentence without regard to whether they've appealed it or not. . . . [With ]this provision, we're essentially saying, you get convicted, you start doing your jail time so that you can appeal. But by the time you get your appellate [case], unless you have successfully completed your appeal, quicker than the term you've been sentenced to, it's going to be moot. You're going to do the time anyway. That's a major change in the law. I don't think it's an appropriate one . . . ." Id., pp. 4347–49.

Public Act 00-200, § 5, further interferes with the Superior Court's control of the criminal proceeding during the interim period between rendering of the verdict and imposition of the sentence. In many cases, a trial court or jury will render a verdict against an accused, but the trial court will continue the case for sentencing on a later date.[16] Because the statute mandates incarceration upon conviction, for a person convicted of a crime involving physical force, a trial court will be forced

---

[16] In the present case, more than two months had elapsed between the trial court's acceptance of the jury verdict and the imposition of sentence against the defendant.

to have a defendant taken into custody even in the circumstance when it is possible that the defendant will receive only a fine or a period of probation.

A review of our criminal statutes reveals numerous crimes that involve the use of force against another person, but which are labeled misdemeanors by our legislature.[17] A misdemeanor is defined to be a crime for which the maximum term of imprisonment may be no more than one year. General Statutes § 53a-26 (a). Conviction for a misdemeanor may subject the defendant to a fine or a term of imprisonment, or a combination of both. See General Statutes § 53a-28 (b);[18] see also General Statutes §§ 53a-36, 53a-42.[19] Under the plain

---

[17] The following crimes involve the use of physical force against another person but also may be appropriately punished by imposition of a fine, rather than a term of imprisonment: cruelty to persons (General Statutes § 53-20); hazing (General Statutes § 53-23a); assault in the third degree (General Statutes § 53a-61); threatening (General Statutes § 53a-62); reckless endangerment in the first degree (General Statutes § 53a-63); reckless endangerment in the second degree (General Statutes § 53a-64); riot in the first degree (General Statutes § 53a-175); breach of the peace (General Statutes § 53a-181); creating a public disturbance (General Statutes § 53a-181a); stalking in the second degree (General Statutes § 53a-181d); stalking in the third degree (General Statutes § 53a-181e); disorderly conduct (General Statutes § 53a-182); and negligent hunting in the second degree (General Statutes § 53a-217e [c] [1]).

[18] General Statutes § 53a-28 (b) provides: "Except as provided in section 53a-46a, when a person is convicted of an offense, the court shall impose one of the following sentences: (1) A term of imprisonment; or (2) a sentence authorized by section 18-65a or 18-73; or (3) a fine; or (4) a term of imprisonment and a fine; or (5) a term of imprisonment, with the execution of such sentence of imprisonment suspended, entirely or after a period set by the court, and a period of probation or a period of conditional discharge; or (6) a term of imprisonment, with the execution of such sentence of imprisonment suspended, entirely or after a period set by the court, and a fine and a period of probation or a period of conditional discharge; or (7) a fine and a sentence authorized by section 18-65a or 18-73; or (8) a sentence of unconditional discharge; or (9) a term of imprisonment and a period of special parole as provided in section 54-125e."

[19] General Statutes § 53a-36 provides: "A sentence of imprisonment for a misdemeanor shall be a definite sentence and the term shall be fixed by the court as follows: (1) For a class A misdemeanor, a term not to exceed one year except that when a person is found guilty under section 53a-61

language of P.A. 00-200, § 5, a defendant convicted of one of these crimes, who intends to appeal, may not be released on bail, even though the trial court may have yet to sentence the defendant to a term of imprisonment. In many cases, the trial court eventually could determine that the defendant should be subject to a fine or a period of probation, rather than a term of incarceration. Even so, during the interim period after conviction and before the imposition of the sentence, P.A. 00-200, § 5, requires that the defendant must be incarcerated. A more significant interference with the trial court's orderly functioning can hardly be imagined than to force it to subject a defendant to a period of incarceration when, later, it properly determines that the appropriate punishment under the circumstances is the imposition of a fine or probation.[20]

---

(a) (3) or 53a-61a, the term shall be one year and such sentence shall not be suspended or reduced; (2) for a class B misdemeanor, a term not to exceed six months; (3) for a class C misdemeanor, a term not to exceed three months; (4) for an unclassified misdemeanor, a term in accordance with the sentence specified in the section of the general statutes that defines the crime."

General Statutes § 53a-42 provides: "A fine for the conviction of a misdemeanor shall be fixed by the court as follows: (1) For a class A misdemeanor, an amount not to exceed two thousand dollars; (2) for a class B misdemeanor, an amount not to exceed one thousand dollars; (3) for a class C misdemeanor, an amount not to exceed five hundred dollars; (4) for an unclassified misdemeanor, an amount in accordance with the fine specified in the section of the general statutes that defines the crime."

[20] For example, General Statutes § 53a-182 (a) provides in relevant part: "A person is guilty of disorderly conduct when, with intent to cause inconvenience, annoyance or alarm, or recklessly creating a risk thereof, he: (1) Engages in fighting or in violent, tumultuous or threatening behavior . . . ." A violation of this statute is considered a class C misdemeanor and could subject the offender to a term of imprisonment not to exceed three months; General Statutes § 53a-36; or a fine not to exceed $500. General Statutes § 53a-42. A person convicted of violating § 53a-182 (a) (1) admittedly has committed a crime involving the use, attempted use or threatened use of physical force, and would be subject to P.A. 00-200, § 5. Accordingly, upon rendering of the verdict, a trial court must immediately remand the defendant to the custody of the department of correction, even if the trial court, at a later sentencing date, subjects the defendant only to a fine.

Furthermore, "[i]t is well established that under the common law a trial court has the discretionary power to modify or vacate a criminal judgment before the sentence has been executed. *State* v. *Walzer*, 208 Conn. 420, 426–28, 545 A.2d 559 (1988); *State* v. *Nardini*, 187 Conn. 109, 123, 445 A.2d 304 (1982); *State* v. *Pallotti*, 119 Conn. 70, 74, 174 A. 74 (1934); *State* v. *Vaughan*, [supra, 71 Conn. 460–61]." *State* v. *Luzietti*, 230 Conn. 427, 431–32, 646 A.2d 85 (1994). The Superior Court's power in this respect, as evidenced by Practice Book § 42-51 et seq., provides a defendant with the ability to request that the court render a judgment of acquittal despite a guilty verdict. The trial court, thus, may determine that the verdict is legally flawed, and either release the defendant or order a new trial. Under P.A. 00-200, § 5, however, the trial court has no discretion to permit the defendant to remain free on bond until it can consider those issues. The statute unduly interferes with the court's power to vacate a criminal conviction during the interim period between return of the jury's verdict and sentencing, because it deprives the court of its power to prevent a defendant from being incarcerated while the court evaluates whether the conviction should in fact be vacated.

By General Statutes § 53a-39a,[21] the legislature has provided that in some cases, the trial court may place

---

[21] General Statutes § 53a-39a provides: "(a) In all cases where a defendant has been convicted of a misdemeanor or a felony, other than a capital felony, a class A felony or a violation of section 21a-278, 21a-278a, 53a-55, 53a-56, 53a-56b, 53a-57, 53a-58 or 53a-70b or any other offense for which there is a mandatory minimum sentence which may not be suspended or reduced by the court, after trial or by a plea of guilty without trial, and a term of imprisonment is part of a stated plea agreement or the statutory penalty provides for a term of imprisonment, the court may, in its discretion, order an assessment for placement in an alternate incarceration program to be conducted by the Office of Adult Probation. If the Office of Adult Probation recommends placement in an alternate incarceration program, it shall also submit to the court a proposed alternate incarceration plan. Upon completion of the assessment, the court shall determine whether such defendant shall be ordered to participate in such program as an alternative to incarcera-

a convicted defendant, who has been sentenced to a term of imprisonment, into an alternate incarceration program in lieu of imprisonment, which may consist of placement in an intensive probation program, a community service program or a residential or nonresidential treatment program. See General Statutes § 53a-39a (b). A trial court makes this discretionary determination after consulting a report prepared by the office of adult probation. General Statutes § 53a-39a (a). Again, P.A. 00-200, § 5, requires that an offender convicted of a crime involving physical force will be incarcerated while the office of adult probation prepares a report that might actually recommend that the defendant be enrolled in a community service program. A trial court must maintain the discretion to grant postconviction bail so that the criminal proceeding does not result in such irrational consequences.

In *State* v. *Menillo*, 159 Conn. 264, 269, 268 A.2d 667 (1970), we stated in dicta: "[Postconviction release] is not authorized by any constitutional requirement but only under § 54-63f of the General Statutes . . . and should be granted with great caution, as pointed out in cases such as *State* v. *Vaughan*, [supra, 71 Conn. 460]." We do not read this language from *Menillo* to mean that *only* the legislature may act in the area of postcon-

---

tion. If the court determines that the defendant shall participate in such program, the court shall suspend any sentence of imprisonment and shall make participation in the alternate incarceration program a condition of probation as provided in section 53a-30.

"(b) An alternate incarceration program includes, but shall not be limited to, an intensive probation program, any community service program approved by the Chief Court Administrator and any residential or nonresidential program approved by the Chief Court Administrator which provides care, supervision and supportive services such as employment, psychiatric and psychological evaluation and counseling, and drug and alcohol dependency treatment. Any defendant placed in an alternate incarceration program shall comply with any other conditions of probation ordered by the court or required by the Office of Adult Probation, as provided in subsections (a) and (b) of section 53a-30."

viction release, for, as we already have noted, the power to act in this respect is a common-law power that has belonged to the Superior Court since our earliest days.

In addition, we do not disagree with the assertion that the legislature may act in the area of postconviction release without violating the separation of powers provision. In fact, even though this petition does not present this question, we discern no interference with the Superior Court's role when the legislature enacted P.A. 98-51, to prevent release for those who have been convicted of some of the most serious crimes, because the term of incarceration normally levied for such crimes would likely exceed the period of time that it would take for resolution of the defendant's appeal. As such, there is no significant danger of a result in which a defendant would have served his entire term of incarceration only to later face an appellate proceeding that would be moot, but for its collateral consequences. See *Housing Authority* v. *Lamothe*, 225 Conn. 757, 765, 627 A.2d 367 (1993); *State* v. *Smith*, 207 Conn. 152, 161, 540 A.2d 679 (1988). Additionally, a person convicted of one of these serious crimes would certainly be facing a term of incarceration, rather than merely a fine or probation. There is, therefore, no danger that such a defendant would be incarcerated between conviction and sentencing, only to learn, at sentencing, that the court had imposed only a fine or probation. Public Act 00-200, § 5, however, goes much farther than P.A. 98-51, and, in doing so, creates such a significant interference that it can only be construed to be unconstitutional.

In *Bartholomew* v. *Schweizer*, supra, 217 Conn. 672, we concluded that General Statutes § 52-216b,[22] "which

---

[22] General Statutes § 52-216b provides: "(a) In any civil action to recover damages resulting from personal injury or wrongful death, counsel for any party to the action shall be entitled to specifically articulate to the trier of fact during closing arguments, in lump sums or by mathematical formulae, the amount of past and future economic and noneconomic damages claimed to be recoverable.

"(b) Whenever, in a jury trial, specific monetary sums or mathematical

permits closing argument to the trier of fact to include counsel's suggestion of an appropriate monetary recovery," did not violate the separation of powers provision. In analyzing whether the statute presented a significant interference with the trial court's responsibility to discipline and regulate the conduct of counsel, we relied on the fact that the statute did not interfere with the exercise of judicial discretion relating to control of attorney conduct during a trial. Id., 681. We concluded that "[d]espite the enactment of § 52-216b, the trial court continues to have the power to monitor closing arguments in the service of justice." Id. We reasoned that "[t]he statute does not purport to abrogate the power or the duty of the trial court to comment upon the propriety of counsel's argument . . . to give curative instructions if necessary after the arguments of counsel to prevent prejudice . . . or to declare a mistrial or to set aside a verdict if counsel's comments were so prejudicial that no curative instruction could preserve the parties' right to a fair trial." (Citations omitted.) Id.

Thus, whereas § 52-216b left intact a trial court's control of the proceedings, P.A. 00-200, § 5, instructs a trial court that, in a very wide class of cases, its discretion to grant postconviction bail has been eviscerated. Public Act 00-200, § 5, cannot survive, even under the reasoning employed in *Bartholomew*, as what is left of the trial court's discretion to grant postconviction bail is a mere remnant of the trial court's common-law power to grant such bail "in all cases . . . ." *State* v. *Vaughan*, supra, 71 Conn. 461.

The state and the amicus curiae attorney general contend that P.A. 00-200, § 5, does not interfere with

formulae are articulated during closing arguments as provided for in subsection (a) of this section, the trial court shall instruct the jury that the sums or mathematical formulae articulated are not evidence but only arguments and that the determination of the amount of damages to be awarded, if any, is solely the jury's function."

the orderly functioning of the Superior Court because courts maintain the ability to release on bail those individuals who have not been convicted of crimes involving physical force. This argument is suspect because it ignores the reality that, if we were to determine that P.A. 00-200, § 5, does not violate the separation of powers provision, then nothing in that doctrine would prevent the legislature from eliminating postconviction bail *in all cases*.

The victim contends in her writ of error that P.A. 00-200, § 5, does not violate the separation of powers provision because it was enacted pursuant to an express constitutional grant of legislative authority under the victim's rights amendment. We note that the state did not make this argument in its brief and that we dismiss the victim's writ of error as moot. See part I of this opinion. Nevertheless, in order to further our "search for an effective and constitutional construction that reasonably accords with the legislature's underlying intent"; *Bartholomew* v. *Schweizer*, supra, 217 Conn. 675–76; we address this contention. We disagree, however, with the victim's claim.

The victim chiefly relies on our decision in *State* v. *Rollinson*, 203 Conn. 641, 526 A.2d 1283 (1987), in support of her claim that P.A. 00-200, § 5, does not violate the separation of powers provision because it was enacted pursuant to an express grant of legislative authority under the victim's rights amendment.[23] This reliance is misplaced. In *Rollinson*, the defendant claimed that General Statutes § 54-46a,[24] the statute pro-

---

[23] See footnote 6 of this opinion.

[24] General Statutes § 54-46a provides for the constitutionally mandated preliminary probable cause hearings for persons charged with any crime punishable by death or life imprisonment. The statute prescribes the applicability of, inter alia, the rules of evidence, motions to suppress, discovery motions, the right to counsel, and confrontation at such hearings.

viding for probable cause hearings pursuant to article first, § 8, of the Connecticut constitution, as amended by article seventeen of the amendments (probable cause hearing amendment),[25] violated the separation of powers provision. *State* v. *Rollinson*, supra, 650. The defendant based this claim on the fact that, at the time of his probable cause hearing, the rules of practice had not yet been amended to provide for rules governing such hearings, although the statute set forth a detailed hearing procedure, creating an "unconstitutional conflict" between the statute and our rules of practice. Id. He had contended that this conflict violated the distinction between substance and procedure under the separation of powers doctrine, where, "[a]s a general proposition, the General Assembly lacks the power to enact rules governing procedure, and the Superior Court lacks the power to promulgate rules governing substantive rights and remedies." Id., 650–51. We disagreed, and, following *State* v. *Sanabria*, 192 Conn. 671, 690, 474 A.2d 760 (1984), held: "[T]he implementing procedures contained in § 54-46a were 'constituent parts' of the substantive rights created by amendment seventeen. *That constitutional amendment, by its own terms, conferred upon the legislature, and not upon the courts, the authority to fashion 'procedures prescribed by law'* for hearings to determine probable cause. In these circumstances, the validity of § 54-46a is not subject to constitutional attack as a violation of separation of powers." (Emphasis added.) *State* v. *Rollinson*, supra, 651.

The present case differs from *Rollinson* because the nature and wording of the probable cause hearing

---

[25] Article first, § 8, of the constitution of Connecticut, as amended by article seventeen of the amendments, provides in relevant part: "No person shall be held to answer for any crime, punishable by death or life imprisonment, unless upon probable cause shown at a hearing *in accordance with procedures prescribed by law*, except in the armed forces, or in the militia when in actual service in time of war or public danger." (Emphasis added.)

amendment at issue in that case is markedly different from that of the victim's rights amendment at issue in the present case. In *Rollinson*, the probable cause hearing amendment expressly directed the provision of preliminary probable cause hearings for persons charged with crimes punishable by death or life imprisonment "in accordance with *procedures* prescribed by law . . . ." (Emphasis added.) Conn. Const., amend XVII. Thus, the probable cause hearing amendment in *Rollinson* could not stand independent of legislative enactments with any degree of efficacy. In discussing the probable cause hearing amendment in *Sanabria*, we noted that the "substantive right . . . is intimately bound up with its procedural underpinnings"; *State* v. *Sanabria*, supra, 192 Conn. 690; and held that the amendment was not effective until the date the implementing legislation was enacted.[26] Id., 691. In *State* v. *Rollinson*, supra, 203 Conn. 651, we applied that analysis, concluding that the implementing procedural legislation was so inextricably intertwined with the amendment that it did not violate the separation of powers provision.

By contrast, the legislative implementation of the substantive rights articulated in the victim's rights amend-

---

[26] In *State* v. *Sanabria*, supra, 192 Conn. 690–91, we held that the probable cause hearing amendment was not self-executing because of the "prescribed by law" clause; therefore, its effective date was the date on which the enabling legislation took effect. We noted: "By its very terms . . . the amendment looks to statutes or rules to supplement its general provision. Thus, it is left to some other authority to establish, inter alia, the evidentiary rules for such hearings, the extent to which witnesses may be examined and cross-examined, and procedures for argument to the court. Absent such supplementation, the provision lacks justiciable standards, thereby preventing meaningful review of any controversy arising under it. . . . The procedures that attend a probable cause hearing are not mere administrative guidelines; they are the *constituent parts* of the right itself." (Citations omitted; emphasis added; internal quotation marks omitted.) Id., 689–90.

ment is not tied to any procedural requirements. The constitution sets forth the following substantive right at issue in the present case:[27] "In all criminal prosecutions, a victim . . . shall have the . . . right to be reasonably protected from the accused throughout the criminal justice process . . . ." Conn. Const., amend. XXIX. The subsequent provision contained in that amendment conferring legislative implementation authority is set forth in general terms. It stands alone and provides: "The general assembly shall provide by law for the enforcement of this subsection. . . ." Conn. Const., amend. XXIX.

The constitutional authorization to the legislature under the victim's rights amendment lacks a specific connection to procedural implementation similar to that found in the probable cause hearing amendment. Such a generally phrased grant of authority to the legislature[28] cannot be interpreted as abrogating the overriding separation of powers doctrine. See *Massameno* v.

---

[27] See footnote 6 of this opinion for the full text of the victim's rights amendment.

[28] We emphasize that generally phrased grants of legislative authority are not a license for the legislature to exceed the limitations found elsewhere within the constitution. Another generally phrased grant of legislative authority is found in article eighth, § 1, of the Connecticut constitution, which provides: "There shall always be free public elementary and secondary schools in the state. The general assembly shall implement this principle by appropriate legislation." In *Horton* v. *Meskill*, 172 Conn. 615, 649–50, 376 A.2d 359 (1977), we construed then-existing legislation in light of article eighth, § 1, and illustrated the limits of both legislative and judicial authority under the separation of powers provision. We held that then-existing legislative school funding provisions were not " 'appropriate legislation' " under article eighth, § 1, because they did not provide a "substantially equal educational opportunity" for students in free public elementary and secondary schools throughout the state. Id., 649. Cognizant of the proper roles of the various governmental branches, we then "stay[ed] [our] hand to give the legislative department an opportunity to act" pursuant to its "expressly mandated duty . . . ." Id., 651.

*Statewide Grievance Committee,* supra, 234 Conn. 551–52 ("We previously have held that the primary purpose of this constitutional doctrine is to prevent commingling of different powers of government in the same hands. . . . The constitution achieves this purpose by prescribing limitations and duties for each branch that are essential to each branch's independence and performance of assigned powers. . . . This court has stated: 'It is axiomatic that no branch of government organized under a constitution may exercise any power that is not explicitly bestowed by that constitution or that is not essential to the exercise thereof.' " [Citations omitted.]); *Adams* v. *Rubinow,* supra, 157 Conn. 154 ("the legislative powers granted the General Assembly are complete except as restricted by the state or federal constitution, just as the judicial powers granted the judicial department are complete except as restricted by the state or federal constitution"); see also *Rice* v. *Cayetano,* 528 U.S. 495, 522, 120 S. Ct. 1044, 145 L. Ed. 2d 1007 (2000) (holding that compliance with one-person, one-vote requirement under fourteenth amendment of federal constitution does not excuse compliance with fifteenth amendment of federal constitution); W. Horton, The Connecticut State Constitution: A Reference Guide (1993) p. 87 ("the legislature in Connecticut has the power to enact any legislation except as it is restricted by the federal Constitution or any provisions of the state Constitution"); R. Rotunda & J. Nowak, Constitutional Law: Substance and Procedure (1999 & 2002 Sup.) §§ 23.6, 23.13 (noting constitution is to be read as single instrument; therefore, exercise of even specifically enumerated legislative powers remains

restricted by other constitutional provisions). The generality of the legislative authority provided for under the victim's rights amendment plainly distinguishes that provision's impact on the separation of powers clause from that of the probable cause hearing amendment. Accordingly, we reject the argument that P.A. 00-200, § 5, does not violate the separation of powers provision because its enactment was constitutionally authorized under the victim's rights amendment.

As Chief Justice Marshall observed long ago: "The powers of the legislature are defined, and limited; and that those limits may not be mistaken, or forgotten, the constitution is written. To what purpose are powers limited, and to what purpose is that limitation committed to writing, if these limits may, at any time, be passed by those intended to be restrained?" *Marbury* v. *Madison*, supra, 5 U.S. 176. For the foregoing reasons, we conclude that P.A. 00-200, § 5, is unconstitutional. The Superior Court is not bound by the prohibition on release of any defendant who has been convicted of a crime involving the use, attempted use or threatened use of physical force against another person.

The order of the trial court releasing the defendant on bail is affirmed; the victim's writ of error is dismissed as moot.

In this opinion the other justices concurred.