## POOLS BY MURPHY AND SONS, INC. *v.* DEPART-MENT OF CONSUMER PROTECTION

Superior Court, Judicial District of New Britain
File No. CV-03 0519089S

Memorandum filed November 21, 2003

*Robinson & Cole* and *Moriarty, Paetzold & Babcock*, for the plaintiff.

*Brendan T. Flynn*, assistant attorney general, with whom was *Richard Blumenthal*, attorney general, for the defendant.

### INTRODUCTION

SHORTALL, J. The facts are not in dispute in the present administrative appeal from an enforcement action by the defendant, the department of consumer protection (department).[1] The plaintiff, Pools by Murphy & Sons, Inc. (Murphy), and Armond Fisher, on July

[1] The facts stated herein are based on findings of fact made by a hearing officer in a proposed final decision and adopted by the commissioner of the department (commissioner) in his final decision. The hearing officer

22, 1999, entered into a written contract for Murphy to install a pool at Fisher's residence for a total price of $27,065. The transaction was governed by the Home Improvement Act (act), General Statutes § 20-418 et seq., and the contract seems to have complied fully with the requirements for such contracts set forth in General Statutes § 20-429, containing, inter alia, a notice of Fisher's right to cancel the contract at any time until midnight of the third business day after he had signed it. Fisher did so the very next day, July 23, via a certified letter, which also requested a return of his deposit of $2700.

Rather than return Fisher's deposit, Murphy had its salesman, James Reed, contact him and negotiate an oral agreement which included a different schedule for the pool's construction and, apparently, different payment terms.[2] This agreement was never reduced to writing, nor was any writing executed to reflect changes from the terms and conditions of the original written contract, as required by § 20-429 (a).

Despite cancellation of the original written contract and the absence of a contract which complied with the act, Murphy rendered certain services to Fisher in the nature of preliminary work for pool construction, e.g., communications and meetings with Fisher and his landscaper and tree removal contractor, preparation of a plan for the pool's layout and applications for a building permit and various other municipal approvals.

had been appointed by the commissioner pursuant to General Statutes § 20-432. His findings of fact were based on testimony and exhibits received at a formal hearing on the administrative complaint filed by the department, are supported by substantial evidence in the record and have not been contested by Murphy.

[2] The commissioner found that there was a dispute as to the terms and timing of payments under the oral agreement, as well as the date when construction was actually to begin. The court, having read the transcript of testimony before the hearing officer, agrees that these terms were, at best, unclear between the parties.

On September 14, 1999, Fisher again canceled his contract with Murphy and requested the return of his deposit. The deposit has never been returned.[3]

Fisher hired counsel to pursue his claim for a return of his deposit of $2700 and paid the law firm $1000 for services rendered. Fisher's attorney wrote to Murphy, stating Fisher's case for the return of the deposit, received a detailed response, which he reviewed and forwarded to Fisher, and apparently had some dealings with the department on Fisher's behalf.[4]

The proceedings which are the subject of the present appeal were commenced by an administrative complaint, issued by the commissioner on June 6, 2002, charging Murphy with certain violations of the act and the Connecticut Unfair Trade Practices Act (CUTPA), General Statutes § 42-110a et seq. After a hearing at which Fisher, Reed and Murphy's founder, Joseph Murphy, testified, the commissioner concluded that Murphy had violated the act by failing to reduce to writing the oral agreement reached with Fisher after the written contract was canceled.[5] He ordered that Murphy pay a civil penalty of $250 for its violation, pursuant to General Statutes § 20-427 (d), that it pay restitution to Fisher in the amount of $3700,[6] pursuant to General Statutes § 20-432 (h), and that it immediately cease and desist

---

[3] Murphy sent Fisher a check for $2700 on October 5, 1999, but issued a stop payment order on the check, and Fisher was unable to cash it.

[4] Although the record does not reflect just what Fisher's attorney had to do with the department, it does contain a letter from the attorney to Fisher enclosing correspondence he had received from the department and expressing his intention to "follow up" with the department if he did not take action on the matter.

[5] Despite the act's provision in General Statutes § 20-427 (c) that "(a) violation of any of [its] provisions . . . shall be deemed to be an unfair or deceptive trade practice under [CUTPA]," the commissioner declined to find a CUTPA violation, concluding instead that Murphy's conduct did not "rise to the level of an unfair or deceptive act in the conduct of Murphy's business."

[6] This sum included Fisher's $2700 deposit plus his counsel fees of $1000.

from engaging in the conduct shown by the evidence at the hearing.

As a further consequence of Murphy's violation, the commissioner declined to make a setoff of any of the expenses Murphy had incurred in rendering preliminary services to Fisher against the restitution he had ordered, even though Murphy had offered "significant testimony" relative to the value of those services, and even though "all of the preliminary work . . . appears to have been done in good faith . . . under the mistaken belief that the original written contract had been resurrected via an alleged oral rescission of Mr. Fisher's written rescission."

I

This appeal is taken pursuant to General Statutes § 20-431 and is governed by the provisions of the Uniform Administrative Procedure Act (UAPA), in particular General Statutes § 4-183.

The court finds that Murphy is aggrieved by the imposition of sanctions for the violation of the act found by the commissioner.

II

Murphy raises three issues in the present appeal. First, it argues that the separation of powers provision contained in article second of the constitution of Connecticut precludes the legislature from empowering an agency of the executive branch of state government, such as the department, from ordering one party to a contract to make restitution to another party, as such power is reserved to the judicial branch of state government through the Superior Court. Second, Murphy contends that it was entitled, the decision of the commissioner to the contrary notwithstanding, to receive a setoff against the restitution it was ordered to make of the expenses it had incurred in rendering preliminary

services to Fisher. Finally, Murphy argues that there was insufficient evidence to support the commissioner's award of attorney's fees as part of his order of restitution.

Given that "[c]onstitutional issues are not considered unless absolutely necessary to the decision of a case"; *State* v. *DellaCamera*, 166 Conn. 557, 560–61, 353 A.2d 750 (1974); the court will consider the second of Murphy's issues first, i.e., whether it was entitled to set off its expenses in partially performing the oral agreement with Fisher against the restitution ordered. If the commissioner was in error in not considering those expenses on the quantum meruit theory advanced by Murphy, his decision may be set aside on that ground and the constitutional issue avoided. A court "has a basic judicial duty to avoid deciding a constitutional issue if a nonconstitutional ground exists that will dispose of the case." *Moore* v. *McNamara*, 201 Conn. 16, 20, 513 A.2d 660 (1986).

## III

The commissioner concluded, as a matter of law, that Murphy's "failure to comply with the technical requirements of [the act] precludes a consideration of" its expenses in partially performing the oral agreement with Fisher "as a setoff or otherwise." On appeal from the decision of an administrative agency, "(e)ven as to questions of law, [t]he court's ultimate duty is only to decide whether, in light of the evidence, the [agency] has acted unreasonably, arbitrarily, illegally, or in abuse of its discretion . . . . Conclusions of law reached by the administrative agency must stand if the court determines that they resulted from a correct application of the law to the facts found and could reasonably and logically follow from such facts." (Internal quotation marks omitted.) *Cannata* v. *Dept. of Environmental Protection*, 239 Conn. 124, 139–40, 680 A.2d 1329 (1996).

The commissioner's conclusion that Murphy violated the act is amply supported by the evidence and the law. The court need look no further than the Supreme Court's decision in *Barrett Builders* v. *Miller*, 215 Conn. 316, 576 A.2d 455 (1990), to determine that the commissioner was also legally on target in rejecting Murphy's claim that it should have been allowed to set off against Fisher's deposit the expenses it had occurred in partially performing the oral agreement it had made with Fisher after he had canceled the original written contract. There, the court held that a home improvement contractor like Murphy may not recover via a theory of quasi-contract or quantum meruit for partial or even full performance of a contract that did not comply with the act. Id., 322. To allow such recovery would undermine the remedial purposes of the act; id., 323; and compromise the legislative intent "to impose the burden of compliance with the statute on the professional, the contractor, rather than on the nonprofessional, the consumer." Id., 326.

The only exceptions to this blanket denial of a right to recover are when the noncompliance with the act is of a "minor and highly technical nature"; *Wright Bros. Builders, Inc.* v. *Dowling*, 247 Conn. 218, 232, 720 A.2d 235 (1998); or when the consumer has acted in bad faith in his dealings with the contractor. *Habetz* v. *Condon*, 224 Conn. 231, 618 A.2d 501 (1992). The complete absence of a written contract that complies with the act, or at the very least a written and signed memorialization of the changes in the terms and conditions of the original contract, as required by § 20-429 (a), cannot be deemed a "minor and highly technical" deviation from the act. Further, Murphy has never claimed, let alone proven, that Fisher acted in bad faith in his dealings with Murphy.[7]

[7] As previously pointed out in the introduction of this memorandum of decision, the commissioner found that Murphy had acted in good faith in partially performing the oral agreement with Fisher. Obviously, that is not

The court concludes that the commissioner was correct in precluding any recovery by Murphy of its expenses in partially performing the unenforceable oral agreement with Fisher by setting them off against Fisher's deposit.[8] The constitutional question must, therefore, be confronted.

## IV

The statute claimed by Murphy to be unconstitutional is § 20-432 (h), which empowers the commissioner of the department to "proceed against any [home improvement] contractor . . . for an order of restitution arising from loss or damages sustained by any person by reason of such contractor's performance of or offering to perform a home improvement in this state." Such proceedings are to be conducted in accordance with the UAPA, and the commissioner shall decide whether to enter an order of restitution against the contractor.[9]

Murphy's task in challenging the validity of this statute is daunting, indeed. "Because a validly enacted statute carries with it a strong presumption of constitutionality, those who challenge its constitutionality must sustain the heavy burden of proving its unconstitutionality beyond a reasonable doubt." (Internal

the same as saying that Fisher acted in bad faith, and the commissioner made no such finding.

[8] It is also questionable that the evidence introduced by Murphy before the hearing officer provided a factual basis for what was, in effect, a claim for restitution. The measure of restitution is "not . . . what the party spent in partial performance of the contract, but . . . the value of a benefit conferred to the other party"; *Strouth* v. *Pools by Murphy & Sons, Inc.*, 79 Conn. App. 55, 63 n.4, 829 A.2d 102 (2003); as to which Murphy offered no evidence.

[9] The commissioner may also, pursuant to General Statutes § 20-426, revoke, suspend or refuse to renew any certificate of registration as a home improvement contractor as a result of such a proceeding, and, pursuant to General Statutes § 20-427 (d), may impose civil penalties for violations of the act. Murphy does not challenge any of these powers of the commissioner or his imposition of a civil penalty of $250.

quotation marks omitted.) *State* v. *McCahill*, 261 Conn. 492, 504, 811 A.2d 667 (2002). Also, the court's obligation in addressing the challenge is clear. "When a question of constitutionality is raised, courts must approach it with caution, examine it with care, and sustain the legislation unless its invalidity is clear." (Citations omitted; internal quotation marks omitted.) Id.

The potential reach of the statute is quite wide. It authorizes the commissioner to order "restitution arising from loss or damages" to not just the owner of the property to be improved, but to "any person" injured by reason of a home improvement contractor's performance or offer to perform a home improvement in Connecticut. General Statutes § 20-432 (h). While "restitution" is commonly defined as the "[r]eturn or restoration of some specific thing to its rightful owner or status"; Black's Law Dictionary (7th Ed. 1999); it can be "an ambiguous term, sometimes referring to the disgorging of something which has been taken and at times referring to compensation for injury done." Id., citing J. Calamari & J. Perillo, Contracts (3d Ed. 1987) § 9-23, p. 376. Thus, not only owners of property on which home improvements have been performed but also others who have been injured as a result of a contractor's performance could conceivably be compensated by the commissioner via an enforcement proceeding under the act.

The facts of the present case, however, limit the scope of the constitutional challenge that may be considered by the court. Here, the commissioner ordered Murphy to return funds previously deposited by Fisher, the owner of the property to be improved under the contract, as well as to reimburse him for legal fees he had paid in an effort to secure his rights under the act. Thus, the court may consider the constitutionality of the statute only insofar as it permits the commissioner to provide such restitutive relief to a contracting party

and may not speculate as to the constitutionality of the statute insofar as it may allow the use of enforcement proceedings to compensate other injured parties for other forms of loss or damage. "[I]f his attack [on the constitutionality of a statute] is to be successful, a plaintiff must sustain the burden of proving the facts essential to his standing, that is, that the effect or impact of the challenged statute on him adversely affects a constitutionally protected right which he has. This means a right which he proves that he has *under the facts of his particular case* and not merely under some possible or hypothetical set of facts not proven to exist." (Emphasis added.) *Hardware Mutual Casualty Co.* v. *Premo*, 153 Conn. 465, 471, 217 A.2d 698 (1966).

"Determination of the scope and constitutionality of legislation in advance of its immediate adverse effect in the context of a concrete case involves too remote and abstract an inquiry for the proper exercise of the judicial function." (Internal quotation marks omitted.) *Lehrer* v. *Davis*, 214 Conn. 232, 235, 571 A.2d 691 (1990); see also *Heslin* v. *Connecticut Law Clinic of Trantolo & Trantolo*, 190 Conn. 510, 527, 461 A.2d 938 (1983).

The provisions of the Connecticut constitution against which the statute must be measured are article second, which divides the "powers of government . . . into three distinct departments, and each of them confided to a separate magistracy, to wit, those which are legislative, to one; those which are executive, to another; and those which are judicial, to another," and article fifth, § 1, which vests "[t]he judicial power of the state . . . in a supreme court, a superior court, and such lower courts as the general assembly shall, from time to time, ordain and establish. . . ." See *State* v. *Clemente*, 166 Conn. 501, 506, 353 A.2d 723 (1974). The two part inquiry which the court must make to evaluate the constitutionality of a statute that is alleged to violate separation of powers principles by impermissibly

infringing on the judicial authority is well established: "A statute will be held unconstitutional on those grounds if: (1) it governs subject matter that not only falls within the judicial power, but also lies exclusively within judicial control; or (2) it significantly interferes with the orderly functioning of the Superior Court's judicial role." (Internal quotation marks omitted.) *State* v. *McCahill*, supra, 261 Conn. 505–506.

The court cannot deny that the statute in question here, § 20-432 (h), authorizes the commissioner, in disputes involving home improvement contractors, to make findings of fact and reach conclusions of law in enforcement proceedings that are of the same nature as those made by courts hearing civil actions between similar parties. Murphy's position seems to be that the fact, alone, that the commissioner is hearing a dispute between private parties which "could have been adjudicated in court" compels the conclusion that the statute constitutes "improper encroachment into the judicial branch." Murphy cites not a single case supporting such a sweeping proposition, and the law is to the contrary.

A statute is not unconstitutional simply because it affects the judicial function. *State* v. *McCahill*, supra, 261 Conn. 505. This is because "[a]s it is used in the separation of powers provision of the constitution . . . the judicial power cannot constitute an exclusive grant of every activity in which courts may engage. The rule of separation of [governmental] powers cannot always be rigidly applied. . . . [The] great functions of government are not divided in any such way that all acts of the nature of the functions of one department can never be exercised by another department; such a division is impracticable, and if carried out would result in the paralysis of government. Executive, legislative, and judicial powers, of necessity overlap each other, and cover many acts which are in their nature common to more than one department. . . . To be unconstitutional in this context, a statute must not only deal with

subject-matter which is within the judicial power, but it must operate in an area which lies exclusively under the control of the courts." (Citations omitted; internal quotation marks omitted.) *State* v. *Clemente*, supra, 166 Conn. 510–11.

Neither of the parties to the present appeal has cited the court to any cases passing on the constitutionality of the numerous statutory provisions authorizing state administrative agencies to conduct adjudicatory proceedings involving private parties as part of their regulatory functions, and the court's research has turned up no such cases.[10] It has been held, however, that the legislature does not infringe on judicial powers when it creates a "simpler and more expeditious remedy" than one already available in the courts for parties to employ in asserting their rights. See, e.g., *In the Matter of Gilhuly's Petition*, 124 Conn. 271, 280, 199 A. 436 (1938) (approving statutory procedure for use, in lieu of mandamus, by party affiliated elector who had been removed from party's enrollment list). Moreover, it is within the constitutional prerogative of the General Assembly to prescribe and enlarge "our methods of remedial justice" by authorizing novel methods of judicial procedure. See *Braman* v. *Babcock*, 98 Conn. 549, 556, 120 A. 150 (1923) (upholding Declaratory Judgment Act, which extended that procedure "to all rights and legal relations"). "These cases stand for the proposition that where public policy, as perceived by the legislature, requires a simple and prompt proceeding in order to implement parties' rights, the legislature is not prohibited by the constitution from creating a statutory proceeding which provides for that simplicity and

---

[10] This lacuna of case law, itself, may be significant. "The fact that for some seventy-five years the grant of this exclusive jurisdiction to these courts [of common pleas] has not been questioned goes far to substantiate the fact that the legislature may, under the constitution, vest exclusive jurisdiction over certain cases in courts inferior to the Superior Court." *Walkinshaw* v. *O'Brien*, 130 Conn. 122, 137, 32 A.2d 547 (1943).

promptness, and which, in order to insure simplicity and promptness, enacts as part and parcel of the statutory proceeding certain minimal procedural incidents. In such a case, the legislature is acting within its historic and traditional function of defining rights and prescribing remedies." *Fishman* v. *Middlesex Mutual Assurance Co.*, 4 Conn. App. 339, 356, 494 A.2d 606 (upholding General Statutes § 52-410, authorizing action to compel insurance carrier to arbitrate claim, even though its pleading procedures and timetables superseded established judicial rules of practice and procedure), cert. denied, 197 Conn. 806, 807, 499 A.2d 57 (1985).

The Supreme Court has also held that the legislature may authorize nonjudicial officers, viz., family support magistrates appointed by the governor, to undertake fact-finding with respect to matters constitutionally reserved for the courts without running afoul of the separation of powers principles embodied in article second. See *DiBerardino* v. *DiBerardino*, 213 Conn. 373, 384, 568 A.2d 431 (1990). Further, it neither encroaches on the power of the judiciary nor violates the principle of separation of powers for the legislature to empower those nonjudicial officers to incarcerate persons found to be in contempt of orders for child and spousal support; *Perry* v. *Perry*, 222 Conn. 799, 816–17, 611 A.2d 400 (1992), overruled in part on other grounds by *Bryant* v. *Bryant*, 228 Conn. 630, 636 n.4, 637 A.2d 1111 (1994); a power long thought to be reserved to a "judicial decision maker authorized by the state constitution . . . ." Id., 818 (*Berdon, J.,* dissenting).

The act in question here " 'was passed for the protection of the public' "; *Barrett Builders* v. *Miller,* supra, 215 Conn. 323; and is remedial in nature, intended to protect consumers from unwarranted liability to home improvement contractors. It is in keeping with those purposes for the legislature to empower the commissioner to act directly against the contractor by ordering

it to make the consumer whole for expenditures incurred due to the contractor's violation of the act. Such an enforcement power is a natural and logical component of the commissioner's regulatory power and, in the appropriate case, like the present one, a more appropriate remedy than denying the contractor the ability to conduct its home improvement business by suspending or revoking its registration. In that context, the statute that gives him the right to find facts and conclude as to the law does not intrude on a power exclusively under the control of the courts.[11]

Nor does it significantly interfere with the orderly conduct of the Superior Court's judicial functions. The Superior Court still hears and decides disputes between homeowners and home improvement contractors. See, e.g., *Strouth* v. *Pools by Murphy & Sons, Inc.*, 79 Conn. App. 55, 829 A.2d 102 (2003); *Sweeney* v. *Pools by Murphy & Sons, Inc.*, Superior Court, judicial district of Hartford, Docket No. CV 00 0599472S. There has been no showing that the commissioner's power in isolated cases to order restitution as part of an enforcement proceeding has deprived the court of any of its functions and prerogatives in such cases.

It is true that a decision of the commissioner in an enforcement proceeding may have preclusive effect,

[11] Moreover, although neither the Supreme Court nor the Appellate Court has directly addressed the issue, there is a body of Superior Court case law holding uniformly that the act provides only a *defense* for a homeowner against a contractor who has not complied with the act; it does not create a cause of action for a homeowner against a contractor, for example, to recover a deposit paid on a contract that is later canceled. See, e.g., *Kavanaugh* v. *Hilliard*, Superior Court, judicial district of Stamford-Norwalk, Docket No. CV 01 0185729 (November 1, 2002) (*Hon. William B. Lewis*, judge trial referee) (33 Conn. L. Rptr. 309). So, the commissioner's enforcement power to order restitution of a deposit may be the homeowner's *only* mode of redress and may not even deal with "subject matter that is within the judicial power." *Heslin* v. *Connecticut Law Clinic of Trantolo & Trantolo*, supra, 190 Conn. 523.

under established principles of res judicata and collateral estoppel, on subsequent civil actions involving the same parties or their privies. "As a general proposition, the governing principle is that administrative adjudications have a preclusive effect when the parties have had an adequate opportunity to litigate." (Internal quotation marks omitted.) *Carothers* v. *Capozziello*, 215 Conn. 82, 94, 574 A.2d 1268 (1990). Whether in a given case res judicata or collateral estoppel will apply to bind a court by the findings of fact or conclusions of law of an administrative agency, however, is dependent on a multiplicity of factors. See *Cumberland Farms, Inc.* v. *Groton*, 262 Conn. 45, 60–61, 808 A.2d 1107 (2002).[12] Given the fact that the commissioner is not authorized to grant any relief *in favor* of a contractor under § 20-432 (h), it would seem to be a rare case when a contractor could not make a strong argument that it should not be bound by the findings and conclusions in an enforcement proceeding.[13]

Contrasting the effects of this statute with those of Public Acts 2000, No. 00-200, § 5, recently held unconstitutional in *State* v. *McCahill*, supra, 261 Conn. 492, is instructive. That statute denied to Superior Court judges all discretion to admit to bail any person convicted of a crime involving the use, attempted use or threatened use of physical force against another person. Id., 494–95. Reviewing "the variety of circumstances in

[12] That res judicata and collateral estoppel give preclusive effect to administrative adjudications in some circumstances reduces the potential for conflicting decisions by courts and administrative agencies in the same controversy, a potential that Murphy points to as one indicator that a statute such as General Statutes § 20-432 (h) is unconstitutional.

[13] This may be one of those rare cases. Although neither the act nor the UAPA provides for counterclaims or the like in adjudicative proceedings, Murphy did offer evidence and argument before the commissioner's hearing officer as to its monetary claims against Fisher based on partial performance of its unenforceable oral contract, and the commissioner explicitly found against Murphy as a matter of law.

which [the statute] must be applied"; id., 512; the court concluded that "the statute is offensive to the orderly functioning of the Superior Court because it destroys, in a potentially very broad class of cases, the trial court's discretion to grant bail, during the pendency of an appeal." Id., 513. "It is these many cases together, along with the elimination of the Superior Court's discretion to grant bail in appropriate circumstances in that large class of cases, that creates the significant interference." Id., 510. The potential that a small number of cases involving home improvement contractors may be determined by the commissioner in enforcement proceedings under the act does not add up to a "significant interference with the orderly functioning of the courts."[14]

V

Although there appear to be no Connecticut cases passing on the constitutional propriety of restitutive money awards by an administrative agency, there is a world of case law elsewhere in the country upholding such action in the face of challenges similar to that mounted by Murphy in the present case.[15] Perhaps the most thoughtful and comprehensive of these opinions is that of the California Supreme Court in *McHugh* v. *Santa Monica Rent Control Board*, 49 Cal. 3d 348, 777 P.2d 91, 261 Cal. Rptr. 318 (1989).

---

[14] A congressional scheme granting a federal administrative agency the power to adjudicate claims for reparations between two private parties under the Commodity Exchange Act, 7 U.S.C. § 1 et seq., was upheld because it constituted a de minimus intrusion on the judicial branch and, therefore, was no threat to the separation of powers principles inherent in article III of the federal constitution. See *Commodity Futures Trading Commission* v. *Schor*, 478 U.S. 833, 856, 106 S. Ct. 3245, 92 L. Ed. 2d 675 (1986).

[15] Indeed, the author of a leading treatise on administrative law has concluded: "Whatever may have once been the case, administrative agencies may now be given jurisdiction to decide virtually every type of civil case." B. Schwartz, Administrative Law (3d Ed. 1991) § 2.23, p. 87.

The Santa Monica rent control board (board) had been granted by city charter the power to hold hearings into excess rent claims by tenants against landlords and to order restitution of rents found to be in excess of the maximums allowed for controlled rental units. The tenant could also file a civil action seeking the same relief. Id., 353. A landlord who had been ordered by the board to make restitution to two of his tenants challenged the charter provision as a violation of the "judicial power" provision of the California constitution, which provides: "The judicial power of this State is vested in the Supreme Court, courts of appeal, superior courts, municipal courts, and justice courts." (Internal quotation marks omitted.) Id., 355.[16] Revisiting a fifty year old precedent which had held unconstitutional a similar grant of power to an administrative agency, the court concluded that "unquestioning and rigid adherence to [the holding in *Jersey Maid Milk Products Co.* v. *Brock*, 13 Cal. 2d 620, 91 P.2d 577 (1939)] would place us out of step with every sister-state court of this country that has considered administrative awards of 'restitutive' damages." *McHugh* v. *Santa Monica Rent Control Board*, supra, 49 Cal. 3d 358.

The court then closely reviewed decisions of several states which had been faced with "judicial power" challenges to the award of restitutive damages by administrative agencies and concluded that "[m]odern courts . . . have not rigidly construed these [constitutional] provisions. Instead, a more tolerant approach to the delegation of judicial powers has emerged out of a perceived necessity to accommodate administrative adjudication of certain disputes and thereby to cope

[16] The charter provision in *McHugh* v. *Santa Monica Rent Control Board*, supra, 49 Cal. 3d 348, was not challenged under the separation of powers clause of the California constitution; see Calif. Const., art. III; but under the clause vesting judicial power in the Supreme Court and the various state trial courts. See Calif. Const., art. VI, § 1. The California Supreme Court's analysis responded to the same constitutional issues as are raised by Murphy in its challenge here.

with increasing demands on our traditional judicial system." Id., 365–66. The guiding principles which emerged from the "better analyzed and more thoughtful decisions"; id., 372; of these courts were found to be: "An administrative agency may constitutionally hold hearings, determine facts, apply the law to those facts, and order relief—including certain types of monetary relief—so long as (i) such activities are authorized by statute or legislation and are *reasonably necessary* to effectuate the administrative agency's *primary, legitimate regulatory purposes*, and (ii) the *'essential' judicial power* (i.e., the power to make enforceable, binding judgments) *remains ultimately in the courts, through review of agency determinations.*" (Emphasis in original.) Id., 372.

The limitation that the adjudicatory activities of administrative agencies be reasonably related to and essential for the agency's regulatory purposes was found to be both necessary and sufficient "to guard against unjustified delegation of authority to decide disputes that otherwise belong in the courts." Id., 374. As long as the court is satisfied as to the necessary connection between the regulatory purpose of the agency and the administrative adjudication of rights between private parties, and the agency's decision is reviewable by the courts before it goes into effect, the court held, the legislation did not trammel on the "judicial power" provision of the California constitution.

Measuring the actions of the board against these standards, the court found the statute granting the board power to order restitution "reasonably necessary to accomplish the administrative agency's primary, legitimate regulatory purposes, i.e., setting and regulating maximum rents in the local housing market." Id., 375. Because the board went beyond ordering restitution, however, and authorized the tenants to withhold the amounts ordered restored from their rents immediately and without the landlord having an opportunity to

obtain judicial review of the board's action, the court found that portion of the board's order did violate the "judicial power" provision of the California constitution because it interfered with the courts' " 'essential judicial power,' " (i.e., the power to make enforceable, binding judgments.) Id., 372.[17]

The principles which the California Supreme Court gleaned from the "veritable tidal wave of decisions" militating against the landlord's constitutional argument in *McHugh*; id.; support the department's power under the act to adjudicate the dispute between Fisher and Murphy, which gives rise to the present case. It is difficult to imagine a power more reasonable and necessary to the department's authority to regulate home improvement contractors than the power to order a contractor to return a homeowner's deposit and otherwise make him whole when the contractor has violated the act. This proceeding, itself, is testimony to the continuing power of the Superior Court to pass on the department's actions before the contractor is obligated to comply with its orders.

Connecticut case law interpreting and applying the separation of powers and judicial power clauses of the constitution as well as judicial decisions from other states which have upheld administrative powers similar to those at issue here demonstrate that Murphy cannot carry and has not carried its burden of showing beyond a reasonable doubt that § 20-432 is unconstitutional.

## VI

There remains only the issue of whether there was sufficient evidence in the record to support the commissioner's award of attorney's fees as part of his order of restitution.

---

[17] The court also struck down a portion of the charter which empowered the board to award treble damages to a tenant because it was not essential to the board's regulatory powers and magnified "beyond acceptable risks, the possibility of arbitrariness inherent in any scheme of administrative

As a matter of fact, it is undisputed that Fisher retained an attorney to recover his $2700 deposit from Murphy and that he paid the attorney $1000 for services rendered in that endeavor. As a matter of law, it is undisputed that "the reasonableness of attorney's fees . . . must be proven by an appropriate evidentiary showing." (Internal quotation marks omitted.) *Barco Auto Leasing Corp.* v. *House*, 202 Conn. 106, 121, 520 A.2d 162 (1987).

There was no direct evidence of the reasonableness of the attorney's fees. Neither the attorney rendering the services nor Fisher testified as to the amount of time spent by the attorney representing Fisher or the hourly rate or other basis for his fee. The record contains a one page letter written by the attorney to Murphy, stating Fisher's case for the return of his deposit, and a half page letter from the attorney to Fisher, enclosing correspondence received from Murphy and the department and stating the attorney's intention to "follow up" with the department. The department claims this is circumstantial evidence of the reasonableness of the $1000 fee charged to and paid by Fisher, but the court disagrees.

In the absence of any evidence as to hours spent on the file and the hourly rate charged Fisher, or some other basis for the $1000 bill, evidence that Fisher was billed $1000 and paid $1000 proves only those facts and nothing more. The commissioner had no way of knowing if the attorney spent two hours at $500 per hour, four hours at $250 per hour, six hours at $175 per hour or if there was some other basis on which Fisher was charged and whether that basis was reasonable. Thus, there was no basis in the record for the commissioner to conclude, as he did, that the $1000 fee was reasonable.

adjudication." *McHugh* v. *Santa Monica Rent Control Board,* supra, 49 Cal. 3d 379.

The commissioner's finding that the attorney's fees were reasonable was "clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record" and was a "clearly unwarranted exercise of discretion. . . ." General Statutes § 4-183 (j).

### CONCLUSION

The decision of the commissioner is affirmed as to his order that Murphy make restitution to Fisher of the $2700 deposit. The appeal of Murphy is sustained as to the commissioner's order that Murphy reimburse Fisher for the $1000 in attorney's fees paid by Fisher to his attorney.