NOTICE: This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press. Errors may be reported by E-mail at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: http://www.courts.state.nh.us/supreme.

THE SUPREME COURT OF NEW HAMPSHIRE

_____

Nos.  2014-0650
      2014-0736


APPEAL OF TOWN OF SALEM & a.
(New Hampshire Bureau of Securities Regulation)

TOWN OF SALEM & a.

v.

LOCAL GOVERNMENT CENTER, INC. & a.

Argued:  September 10, 2015
Opinion Issued:  February 18, 2016


Bernstein, Shur, Sawyer & Nelson, P.A., of Manchester, filed no brief, for petitioner New Hampshire Bureau of Securities Regulation.


McLane, Graf, Raulerson & Middleton, P.A., of Manchester, filed no brief, for respondents Local Government Center Property-Liability Trust, LLC and New Hampshire Municipal Association Property-Liability Trust, Inc.


Ramsdell Law Firm, PLLC, of Concord (Michael D. Ramsdell on the brief and orally), for respondents Health Trust, Inc.; Local Government Center Health Trust, LLC; and LGC-HT, LLC.

Douglas, Leonard & Garvey, P.C., of Concord (Richard J. Lehmann on the brief and orally), for the Towns of Salem, Temple, Auburn, Bennington, Meredith, Northfield, Peterborough, and Plainfield.

City Solicitor's Office, of Concord (James W. Kennedy, city solicitor, and Danielle L. Pacik, deputy city solicitor, on the brief), for plaintiff City of Concord.

Ramsdell Law Firm, PLLC, of Concord (Michael D. Ramsdell on the brief and orally), for the defendants.

HICKS, J. In the first of these consolidated appeals, the Towns of Salem, Temple, Auburn, Bennington, Meredith, Northfield, Peterborough, and Plainfield (the Towns) appeal an order of the presiding officer of the New Hampshire Bureau of Securities Regulation (Bureau) denying their motion to share in the distribution of approximately $17.1 million in excess earnings and surplus by one of the respondents, Health Trust, Inc. (Health Trust), in an administrative action brought by the Bureau against: Health Trust; Local Government Center, Inc.; Local Government Center Real Estate, Inc.; Local Government Center Health Trust, LLC; Local Government Center Property-Liability Trust, LLC; New Hampshire Municipal Association Property-Liability Trust, Inc. (Property Liability Trust); LGC-HT, LLC; and Local Government Center Workers' Compensation Trust, LLC (collectively, the administrative respondents). See RSA 5-B:5, I(c) (2013).

In the second appeal, the Towns and the City of Concord (collectively, the plaintiffs) appeal an order of the Superior Court (McNamara, J.) granting the motion to dismiss filed by, among others,[*] defendants Local Government Center, Inc.; New Hampshire Municipal Association Property-Liability Trust, Inc.; New Hampshire Municipal Association, LLC; Health Trust, Inc.; LGC-HT, LLC; LGC-PLT, LLC; Local Government Center Healthtrust, Inc.; Local Government Center Property-Liability Trust, LLC; and Local Government Center Real Estate, Inc. (collectively, the civil action defendants). We consolidated these related civil and administrative cases on appeal. For ease of reference, we will, where applicable, collectively refer to the administrative respondents and the civil action defendants as LGC. We affirm in part, vacate in part, and remand.

_____

[*] The motion to dismiss noted that it was also submitted on behalf of Local Government Center Health Trust, LLC, which, although not named in the case caption, was identified as a party defendant in the plaintiffs' complaint.

The following facts were found by the trial court or the presiding officer, were recited by us in the related case of Appeal of Local Government Center, 165 N.H. 790 (2014), or appear in the record before us. The first appeal, challenging the administrative order, involves subsequent proceedings in the matter before us in Appeal of Local Government Center. The identities of, and the relationships between and among, the respondents in that appeal, as well as the factual and procedural background of the administrative action against them, are described in Appeal of Local Government Center and repeated here only as necessary. Generally, those respondents are or have been involved in the operation of pooled risk management programs pursuant to RSA chapter 5-B. See Appeal of Local Gov't Ctr., 165 N.H. at 794-96; RSA ch. 5-B (2013 & Supp. 2015). The superior court action from which the second appeal arises named three additional defendants — New Hampshire Municipal Association, LLC; LGC-PLT, LLC; and Local Government Center Healthtrust, Inc. — alleging that they, along with the other defendants, "are companies and corporations offering products and services governed by RSA 5-B." The plaintiffs are municipalities that were members of pooled risk management programs run by several of the defendants.

In 2011, the secretary of state commenced an adjudicative proceeding prompted by a staff petition filed by the Bureau alleging that the administrative respondents had violated RSA chapters 5-B and 421-B. See Appeal of Local Gov't Ctr., 165 N.H. at 797. The presiding officer issued an order on August 16, 2012 (the August 16 Order) ruling that the administrative respondents had violated several provisions of RSA chapter 5-B, including RSA 5-B:5, I(c), which provides, in pertinent part:

> I. Each pooled risk management program . . . shall:
>
> . . . .
>
> (c) Return all earnings and surplus in excess of any amounts required for administration, claims, reserves, and purchase of excess insurance to the participating political subdivisions.

See id. at 798. The August 16 Order required that Health Trust and Property Liability Trust return excess funds of $33.2 million and $3.1 million, respectively, to those political subdivisions that were members of those programs on August 16, 2012. The August 16 Order also directed the Bureau and the administrative respondents to enter into an "agreed-upon plan" to distribute excess funds to members that had participated in the program at any time after June 10, 2010; however, if those parties failed to reach an agreement, the order required distribution only to Health Trust's and Property Liability Trust's current members. The parties failed to reach agreement, and the excess funds were ordered to be distributed to current members.

The administrative respondents appealed the August 16 Order to this court.  See Appeal of Local Gov't Ctr., 165 N.H. at 790, 793-94.  We affirmed in part, vacated portions of the order not relevant here, and remanded for further proceedings.  See id. at 809, 810, 814.  Thereafter, the Bureau filed a motion for entry of default order against the administrative respondents alleging noncompliance with the August 16 Order.  The issues related to that motion were resolved by a consent decree incorporated into the presiding officer's order.  During that proceeding, the Towns were permitted to intervene in order to be heard on their proposal to participate, as former members of Health Trust, in the further distribution of approximately $17.1 million in excess funds.  Their motion proposing such a distribution was denied, and the Towns now appeal.

Meanwhile, the plaintiffs filed suit against the civil action defendants in superior court.  Their amended complaint alleged that they had been members of pooled risk management programs run by the civil action defendants at various times, but were no longer members on August 16, 2012.  Therefore, they did not participate in the distribution of excess funds.  They alleged:

> As a result of the manner by which payment was made under the administrative order, the plaintiffs hereby request the Court to award money damages pursuant to common law for their recovery. . . .  [S]ince no monies have yet flowed back from LGC to these nine plaintiff communities, they are now forced to seek justice pursuant to their common law rights, wholly separate and apart from any administrative action pursued by the Secretary of State.

The plaintiffs' amended complaint pleaded, among other things, claims for breach of contract and implied-in-fact contract, and breach of fiduciary duty.  The civil action defendants filed a motion to dismiss, which the trial court granted.  The trial court concluded that: (1) the remedies for overcharges afforded by RSA 5-B:4-a "are intended to be exclusive in nature"; and (2) even if the plaintiffs have a contractual right to the payment of excess funds, "this action may not proceed because LGC has complied with a final administrative order . . . to make a distribution of the funds Plaintiffs seek."  The plaintiffs now appeal.

We first review the trial court's dismissal of the plaintiffs' civil action.  "In reviewing the trial court's grant of a motion to dismiss, our standard of review is whether the allegations in the [plaintiffs'] pleadings are reasonably susceptible of a construction that would permit recovery."  In re Estate of Mills, 167 N.H. 125, 127 (2014).  "We assume that the facts set forth in the [plaintiffs'] pleadings are true[,] . . . construe all reasonable inferences in the light most favorable to [them], . . . [and] then engage in a threshold inquiry that tests the facts in the [complaint] against the applicable law."  Id.  "[W]e will

4

uphold the granting of the motion to dismiss if the facts pled do not constitute a basis for legal relief." Estate of Ireland v. Worcester Ins. Co., 149 N.H. 656, 658 (2003).

The plaintiffs argue that the trial court erred in: (1) construing RSA 5-B:4-a as abrogating their common law claims; and (2) ruling that LGC's compliance with the August 16 Order immunizes it from the plaintiffs' common law claims. We first address the plaintiffs' contention that the trial court erred in finding "that RSA 5-B:4-a 'vests exclusive jurisdiction relating to overcharges in the Secretary of State,'" and provides exclusive remedies therefor. Resolving this issue requires us to engage in statutory interpretation.

Statutory interpretation is a question of law, which we review de novo. In matters of statutory interpretation, we are the final arbiter of the intent of the legislature as expressed in the words of the statute considered as a whole. We first look to the language of the statute itself, and, if possible, construe that language according to its plain and ordinary meaning. We interpret legislative intent from the statute as written and will not consider what the legislature might have said or add language that the legislature did not see fit to include.

Appeal of Local Gov't Ctr., 165 N.H. at 804 (citations omitted).

The statute provides, in relevant part:

I. Notwithstanding any other provision of law, the secretary of state shall have exclusive authority and jurisdiction:

(a) To bring administrative actions to enforce this chapter.

(b) To investigate and impose penalties for violations of this chapter, including but not limited to:

(1) Fines.

(2) Rescission, restitution, or disgorgement.

RSA 5-B:4-a (Supp. 2015).

The plaintiffs argue that "[t]he statute merely refers to the Secretary's exclusive right to bring administrative actions, investigate, and impose penalties for violations." They then contend that the trial court's interpretation fails to account for the emphasized terms, which "act as limits on the exclusivity of the secretary of state's authority and jurisdiction." "At no point in the statute," the plaintiffs argue, "does the text express that the Secretary of

5

State's exclusive administrative power abrogates the right of individuals or corporations to bring common law or statutory actions in a court of law, outside of an administrative setting." In support of this argument, they rely upon the doctrine that this court "will not construe a statute as abrogating the common law unless the statute clearly expresses such an intention." Case v. St. Mary's Bank, 164 N.H. 649, 655 (2013) (quotation omitted).

The plain language of RSA 5-B:4-a grants the secretary of state "exclusive authority and jurisdiction" to enforce RSA chapter 5-B and to address violation of its provisions by means including "[r]escission, restitution, or disgorgement." RSA 5-B:4-a. We conclude that this language clearly expresses the intention to supplant any common law claim within that realm and provide instead an administrative enforcement mechanism with the right of appeal to this court. See RSA 5-B:4-a, VIII. To determine whether the plaintiffs' claims fall within that realm, we examine their amended complaint.

Count I in the plaintiffs' complaint alleged that "[t]he plaintiffs were in a contractual relationship with the LGC defendants, due both to the participation and membership agreements between the parties, as well as the implied-in-fact contract by operation of the governing statute, RSA chapter 5-B" (emphasis added), and that the defendants breached those contracts by "failing to return surplus funds on an annual basis." Count II alleged that the defendants, as trustees of Property Liability Trust and Health Trust, stood in a fiduciary relationship with the plaintiffs and that they breached their fiduciary duties by: (1) "failing to return to the plaintiffs, the amounts of surplus and earnings not needed for administration, claims, reserves, and purchase of excess insurance, in violation of RSA 5-B:5" (emphasis added); and (2) by failing to return surplus funds during the administrative proceedings against them. The claims alleging an implied-in-fact contract and a violation of RSA 5-B:5 (emphasized above) are, by their terms, attempts to enforce the statute, and thus plainly fall within the secretary's exclusive jurisdiction. The plaintiffs did not adequately address in their brief the second alleged breach of fiduciary duty claim — failure to return surplus funds during the administrative proceedings — and therefore we decline to consider it. See In re James N., 157 N.H. 690, 693 (2008). What remains is the claim for breach of the participation and membership agreements.

We hold that a common law contractual claim for the return of surplus funds as alleged by the plaintiffs is inextricably entwined with RSA chapter 5-B and cannot exist alongside the administrative mechanism created in that chapter. Were we to hold otherwise, parties could create an end-run around the legislative grant of exclusive enforcement jurisdiction by incorporating statutory provisions within their contracts and then privately enforcing such provisions through breach of contract actions in court. Accordingly, we conclude that the plaintiffs' contract claim falls within the ambit of the

secretary of state's exclusive jurisdiction and is remediable solely through RSA chapter 5-B.

The plaintiffs nevertheless argue that "[t]he RSA chapter 5-B statutory scheme clearly anticipates that risk pools created pursuant to that statutory scheme may be sued by private parties." They cite RSA 5-B:6, II, which provides that "[a]ny such program operating under this chapter, whether or not a body corporate, may sue or be sued; make contracts; hold and dispose of real property; and borrow money, contract debts, and pledge assets in its name." RSA 5-B:6, II (2013).

Our holding above is not inconsistent with this provision. RSA chapter 5-B contemplates that pooled risk management programs may make — and be sued upon — all manner of private contracts unrelated to the matters governed by that chapter. Such programs could, for instance, contract for goods and services such as rental space or office supplies, and nothing herein holds that breaches of those agreements could not be remedied through private lawsuits.

The plaintiffs also assert that "[g]overnment regulation and common law causes of action coexist in a wide range of contexts." They cite a single example: that "the power of the government to order a criminal defendant to pay restitution pursuant to RSA 651:61-a et seq. . . . does not foreclose the right of crime victims to seek compensation through the civil justice system." Unlike the statutory scheme here, which grants "exclusive authority and jurisdiction" to the secretary of state, RSA 5-B:4-a, RSA 651:65 explicitly reserves the right of crime victims to seek compensation via civil action. See RSA 651:65 (2007) (stating, in part, that "[t]his subdivision does not bar, suspend, or otherwise affect any right or liability for damages, penalty, forfeiture or other remedy authorized by law to be recovered or enforced in a civil action"). We need not search for other contexts in which government regulation and common law causes of action may coexist as our task is to determine whether the particular causes of action alleged in this case are foreclosed by the legislature's grant of exclusive jurisdiction to the secretary of state in the particular statute at issue here — RSA 5-B:4-a. We hold that they are.

The plaintiffs also cite legislative history to support their interpretation of RSA 5-B:4-a. Having found the statute's plain language unambiguous, however, we will not search further for its meaning. See JP Morgan Chase Bank v. Grimes, 167 N.H. 536, 537 (2015) ("If the language of a statute is plain and unambiguous, we need not look beyond it for further indication of legislative intent."). Because we uphold the trial court's ruling that RSA 5-B:4-a provides the exclusive remedy for the plaintiffs' claims, we also need not address the plaintiffs' challenge to the court's alternative rulings based upon LGC's compliance with an administrative order.

We now turn to the Towns' appeal from the presiding officer's denial of their request to participate in the distribution of excess funds. Our standard of review is set forth in RSA 541:13. See RSA 5-b:4-a, VIII (providing that "[d]ecisions of the secretary of state may be appealed to the supreme court pursuant to RSA 541"). Accordingly, we will not set aside or vacate the presiding officer's decision "except for errors of law, unless [we are] satisfied, by a clear preponderance of the evidence before [us], that such order is unjust or unreasonable." RSA 541:13 (2007). "The presiding officer's findings of fact are deemed prima facie lawful and reasonable." Appeal of Local Gov't Ctr., 165 N.H. at 803.

The plaintiffs first argue that the presiding officer's decision is unlawful because it is contrary to RSA 5-B:5, I. The presiding officer found "little foundation in law" for the plaintiffs' claim to a share of surplus funds. Noting that the August 16 Order directed that the funds be returned to members consistent with RSA 5-B:5, I(c), the presiding officer then interpreted that provision as follows:

> The "Pooled Risk Management Program" statute does not make provision for any past or former member of a pooled risk management program. RSA 5-B: 5, I(c) provides only for returns to "participating political subdivisions," not any past or former participating political subdivisions. Applying rules of statutory construction considering the statute as a whole and assigning a word's ordinary meaning in interpreting the statute, the more reasonable interpretation is that the word "participating" is a present [participle] attached to its subject, "political subdivisions." A participle, i.e. a verb used as an adjective, in this instance indicates . . . tense. That tense is the present tense.

The plaintiffs argue that "[e]ven if the term 'participating members' is interpreted to mean only currently participating members, the plaintiffs still have a right to the excess compensation that was withheld from them while they were 'currently participating members.'" This argument points out the error in the presiding officer's reasoning. RSA 5-B:5, I(c) is the provision the LGC defendants violated; it does not circumscribe the remedy. RSA 5-B:4-a authorizes the secretary of state to impose penalties for violations of the statute's provisions — here violation of RSA 5-B:5, I(c) — by means including "[r]escission, restitution, or disgorgement." RSA 5-B:4-a, I(b)(2). The August 16 Order states that "[t]o the extent that this order requires the return of funds or property in the alternative, this order requires compliance with these provisions as restitution or disgorgement pursuant to RSA 5-B:4-a, VII."

Either of the remedies purportedly used could involve repayment of the wrongfully held funds to the parties from whom the defendants obtained those funds. See, e.g., Pools by Murphy v. Dept. of Consumer Pro., 841 A.2d 292,

8

299 (Conn. Super. Ct. 2003) (noting that "restitution is commonly defined as the return or restoration of some specific thing to its rightful owner or status," but can also refer to disgorgement or compensation for injury (quotation and brackets omitted)); Frank Shop v. Crown Cent. Petroleum Corp., 564 S.E.2d 134, 140 (Va. 2002) (describing disgorgement as giving up something on compulsion by law "with the amount disgorged awarded to the party damaged by the illegal act"). Thus, to the extent the presiding officer concluded that he lacked the authority to penalize a violation of RSA 5-B:5, I(c) by ordering payment to former members of a pooled risk management program as either restitution or disgorgement, he committed an error of law. Accordingly, we vacate the presiding officer's decision and remand for further proceedings. We note that our decision merely clarifies the scope of the secretary's authority under RSA 5-B:4-a; we express no opinion as to what penalty should be ordered in this case. Having found that the presiding officer committed legal error, we need not address the plaintiffs' argument that his decision is unreasonable because it reaches a result that "is not fair, deserved, sensible or appropriate."

Affirmed in part; vacated in part; and remanded.

DALIANIS, C.J., and LYNN, J., concurred.