**THE STATE OF NEW HAMPSHIRE**

**SUPREME COURT**


**In Case No. 2016-0654, <u>Appeal of HealthTrust, Inc.</u>, the court on March 29, 2018, issued the following order:**

Having considered the briefs and oral arguments of the parties, the court concludes that a formal written opinion is unnecessary in this case. This is the third time that this matter has come before us. The respondent, HealthTrust, Inc. (HealthTrust), is a pooled risk management program operated by the Local Government Center, Inc. <u>Appeal of the Local Gov't Ctr.</u>, 165 N.H. 790, 794 (2014). HealthTrust appeals orders issued by a presiding officer of the petitioner, the New Hampshire Bureau of Securities Regulation (Bureau), which were issued after remand. <u>See</u> <u>Appeal of Town of Salem</u>, 168 N.H. 572, 580-81 (2016). On appeal, HealthTrust argues that the presiding officer exceeded the scope of remand when he required HealthTrust to pay an additional $2.1 million to 66 of its former and current members that had not previously participated in this case. We agree and, therefore, reverse that portion of the presiding officer's order.

The following facts were found by the presiding officer, were recited in our prior opinions, or appear in the record before us. <u>See</u> <u>Appeal of Local Gov't Ctr.</u>, 165 N.H. at 794-803; <u>Appeal of Town of Salem</u>, 168 N.H. at 574-76. Briefly, in 2011, the secretary of state began an administrative proceeding against HealthTrust and related pooled risk management programs, including Property-Liability Trust, Inc. (Property-Liability Trust), based upon allegations that the pooled risk management programs had violated RSA chapter 5-B. <u>See</u> <u>Appeal of Town of Salem</u>, 168 N.H. at 575. In an August 2012 order, the Bureau's presiding officer decided that the pooled risk management programs had violated several provisions of RSA chapter 5-B, including RSA 5-B:5, I(c) (2013), which requires a pooled risk management program to return to "participating political subdivisions" the "earnings and surplus" that are "in excess of any amounts required for administration, claims, reserves, and purchase of excess insurance." <u>Id</u>. (quotations omitted).

To remedy the violation of RSA 5-B:5, I(c), the presiding officer ordered the Bureau and HealthTrust to submit an agreed-upon plan for the return of $33.2 million to HealthTrust's members who had participated in HealthTrust "at any time after June 14, 2010." <u>See</u> <u>Appeal of Local Gov't Ctr.</u>, 165 N.H. at 802. If the Bureau and HealthTrust failed to agree, the order required that the $33.2 million be disbursed only to those members who participated in HealthTrust as of August 16, 2012, the date of the presiding officer's decision. <u>See</u> <u>Appeal of Town of Salem</u>, 168 N.H. at 575. The presiding officer ordered

that the $33.2 million be returned to HealthTrust members by September 1, 2013.  Appeal of Local Gov't Ctr., 165 N.H. at 802.

The presiding officer also ordered Property-Liability Trust to transfer $17.1 million to HealthTrust.  See id. at 794, 802-03.  Those funds, "to the extent they constitute[d] amounts in excess of earnings and surplus" of HealthTrust, were to be "returned to members consistent with RSA 5-B:5, I(c)."  See id. at 803; Appeal of Town of Salem, 168 N.H. at 580.

HealthTrust, Property-Liability Trust, and the other pooled risk management programs appealed the presiding officer's August 2012 order to this court.  See Appeal of Local Gov't Ctr., 165 N.H. at 793-94.  We affirmed in part, vacated portions of the order not relevant here, and remanded for further proceedings.  See id. at 809, 810, 814.

The Bureau subsequently filed a motion for entry of a default order against HealthTrust and the other pooled risk management programs.  See Appeal of Town of Salem, 168 N.H. at 575-76.  The motion for entry of a default order alleged that, unbeknownst to the Bureau, HealthTrust and Property-Liability Trust had entered into a confidential settlement agreement, effective upon the issuance of our opinion in Appeal of Local Government Center.  The motion asserted that the settlement agreement violated the presiding officer's August 2012 order and requested that the presiding officer so rule.

Thereafter, HealthTrust and Property-Liability Trust entered into a new agreement that, in effect, extinguished their prior settlement agreement.  In its pleading notifying the presiding officer of the new agreement, HealthTrust stated that "subject to the Presiding Officer's and [the Bureau's] approval, HealthTrust will distribute the $17.1 million to its current members or another identified combination of current and former HealthTrust members."

In response, eight towns sought to intervene in the proceedings.  See id. at 576.  For ease of reference, we refer to those towns as "the intervenor towns."  The presiding officer granted them "limited intervenor status," allowing them "to address solely the issue of any payment of funds by HealthTrust . . . to political subdivisions" from the $17.1 million transferred to HealthTrust by Property-Liability Trust.  See id.

Subsequently, the Bureau, HealthTrust, and Property-Liability Trust entered into a consent decree, approved by the presiding officer, that resolved the issues raised in the Bureau's motion for entry of a default order.  See id.  In the consent decree, the parties acknowledged that Property-Liability Trust had paid to HealthTrust approximately $15.4 million of the $17.1 million owed.  The decree set forth the terms by which Property-Liability Trust would pay the remaining $1.7 million and provided that the Bureau would not "take any regulatory action" against Property-Liability Trust based solely and exclusively

2

on those payments. The consent decree provided that the parties "waive[d] all appeals from the enforcement proceeding which is resolved by this Consent Decree."

The intervenor towns filed a motion proposing how to distribute the $17.1 million to former members of HealthTrust. See id. The intervenor towns recommended a method by which to calculate each former member's proposed proportional share of the $17.1 million in surplus funds. The portion of the $17.1 million sought by the intervenor towns was $278,587. HealthTrust objected to the intervenor towns' motion; the Bureau took no position on it.

The presiding officer denied the intervenor towns' motion, ruling that the towns could not share in the surplus funds because, pursuant to the presiding officer's August 2012 order, the $17.1 million was to be "returned to members consistent with RSA 5-B:5, I(c)," and because RSA 5-B:5, I(c) allows return of funds only to "participating political subdivisions." Id. at 580 (quotation omitted). The presiding officer interpreted the phrase "participating political subdivisions" to refer only to towns that were current members of HealthTrust and not to towns that were past or former members. Id. The presiding officer specifically noted that the intervenor towns did not represent any entities other than themselves, and, thus, he declined to consider whether any other potential intervenors had standing.

The intervenor towns appealed, but, according to HealthTrust, no party moved to stay HealthTrust's distribution of the $17.1 million. Id. at 576. Thus, in September 2014, HealthTrust disbursed the $17.1 million to 352 of its then-current members based upon each member's proportional payments during the 2014 fiscal year.

In the intervenor towns' appeal, we held that the presiding officer had erred when he ruled that the intervenor towns were not entitled to a share of the $17.1 million. See id. at 580-81. We explained that RSA 5-B:5, I(c) is the provision that HealthTrust violated; "it does not circumscribe the remedy." Id. at 580. Rather, RSA 5-B:4-a, I(b)(2) (2013) allows the presiding officer to remedy a violation of RSA 5-B:5, I(c) by ordering rescission, restitution, or disgorgement. Id. We further explained that "to the extent the presiding officer concluded that he lacked the authority to penalize a violation of RSA 5-B:5, I(c) by ordering payment to former members of a pooled risk management program as either restitution or disgorgement, he committed an error of law." Id. at 581. Therefore, we vacated the presiding officer's decision on the intervenor towns' motion and remanded "for further proceedings." Id. We stated that we expressed no opinion "as to what penalty should be ordered in this case," given that we were merely clarifying the scope of the presiding officer's authority under RSA 5-B:4-a (Supp. 2017) to penalize violations of RSA 5-B:5, I(c). Id.

3

On remand, the presiding officer determined that, in light of this court's statutory interpretation, he had erred when he had excluded former HealthTrust members from the universe of potential recipients of the $17.1 million surplus funds. He decided that the remand proceeding had to "resolve the issues of both the universe of potential recipients and the proportional distribution of the $17.1 million surplus funds." He further determined that preclusion did not apply to claims of restitution by political subdivisions that had not sought to intervene in the proceedings. According to the presiding officer, our decision in Appeal of Town of Salem gave "breath to all political subdivisions now determined to have a statutory right to receive a proportionate share of the illegal subsidy made by [HealthTrust] to support . . . Property[-]Liability Trust . . . ." Thus, the presiding officer concluded that our decision in Appeal of Town of Salem required that "a true proportionate restitution" be "made to all political subdivisions which had contributed funds during the years 2003 through 2010" to HealthTrust. (Emphasis added.)

Accordingly, the presiding officer ordered HealthTrust to make payments to an "expanded pool of recipients," which included "all former members and, as appropriate, current members," in accordance with amounts to which the parties and intervenor towns had previously stipulated. He also ordered that, to the extent that funds in excess of $17.1 million were required to be paid, those funds constituted an additional penalty for HealthTrust's prior violation of RSA 5-B:5, I(c). HealthTrust asserts that the presiding officer's decision requires it to pay an additional $2.1 million to 66 of its former and current members that had not previously participated in this case.

HealthTrust unsuccessfully moved for reconsideration of the presiding officer's decision, and this appeal followed. At HealthTrust's request, we have stayed the presiding officer's decision while this appeal is pending. HealthTrust represents that, after it filed this appeal, it agreed to pay the intervenor towns $278,587, the entire amount of their claim. Because the intervenor towns have represented that they are no longer interested parties in this appeal, they are deemed non-participants.

Our standard of review of the presiding officer's decision is set forth in RSA 541:13 (2007). See RSA 5-B:4-a, VIII (2013). Thus, we will not set aside the presiding officer's decision except for errors of law, unless we are satisfied, by a clear preponderance of the evidence, that his order is unjust or unreasonable. Appeal of Local Gov't Ctr., 165 N.H. at 803; see RSA 541:13. The presiding officer's findings of fact are deemed prima facie lawful and reasonable. Appeal of Local Gov't Ctr., 165 N.H. at 803; see RSA 541:13.

HealthTrust and the Bureau dispute the scope of our remand to the presiding officer. "The scope of remand is limited by the nature of the error or issue identified." Kalil v. Town of Dummer Zoning Bd. of Adjustment, 155 N.H. 307, 312 (2007). In Appeal of Town of Salem, the issue before us was narrow:

4

whether the presiding officer had erred when he denied the intervenor towns' motion regarding distribution of the $17.1 million. See Appeal of Town of Salem, 168 N.H. at 580-81. We decided only that discrete issue. See id. We explained that, when the presiding officer denied the motion, he did so because he mistakenly determined that the statutory scheme precluded former HealthTrust members from sharing in those funds. Id. Having clarified the law, we then vacated the presiding officer's denial of the intervenor towns' motion and remanded for him to decide the motion anew. See id. at 581.

We intended that the presiding officer, on remand, would address only the narrow issue of whether to grant or deny the intervenor towns' motion regarding distribution of the $17.1 million in surplus funds. See id. Although, in their motion, the intervenor towns also sought a remedy on behalf of other former HealthTrust members, they had no standing to do so. As the presiding officer observed, the intervenor towns represented only themselves. To the extent that the presiding officer decided issues beyond whether the intervenor towns were entitled to a remedy, he exceeded the scope of remand. We, therefore, reverse his decision to the extent that it required HealthTrust to make payments to political subdivisions other than the intervenor towns and the 352 then-current members to which HealthTrust paid the $17.1 million in September 2014.

Reversed in part.

HICKS, LYNN, and HANTZ MARCONI, JJ., concurred.

**Eileen Fox,**
**Clerk**

5